POOLE, Circuit Judge:
Appellants William D. Davis and Curry James Williams were convicted on the following charges: (1) conspiring to distribute one-half pound of cocaine base, a Schedule II Controlled Substance under 21 U.S.C. § 812(c), in violation of 21 U.S.C. 846; and (2) distributing one-half pound of cocaine base, in violation of 21 U.S.C. § 841(a)(1). In these consolidated appeals, Davis and Williams challenge the legality of their convictions and sentences on several grounds. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm both of their convictions. We vacate their sentences and remand to the district court for resentencing.
I.
Davis and Williams were indicted on December 18,1991 and charged with the above-described offenses. At their joint trial, which commenced on July 6,1992, the following evidence was adduced:
In 1991, Richard McConnell, an undercover Drug Enforcement Administration (DEA) agent, instructed Hal Richardson, a longtime paid confidential informant with an extensive criminal history, to arrange a drug transaction in Las Vegas, Nevada involving “crack” cocaine, a very pure cocaine intended for smoking rather than inhalation. Richardson then arranged a crack deal with Williams, whom Richardson stated was selling crack in Las Vegas, to take place on December 5, 1991. The terms of the deal were that Williams would sell McConnell, who was posing as Richardson’s friend, one-half pound of crack in exchange for $6,400.00. The sale was to take place near the Stardust Casino in Las Vegas.
When Williams did not arrive at the agreed time, Richardson called him and told him that McConnell was ready to consummate the deal. When Williams still failed to arrive promptly, Richardson called him again and had him speak to McConnell. Williams asked McConnell if he was serious about going through with the deal and if he had the $6,400.00. When McConnell responded affirmatively, Williams agreed to meet with him.
Soon thereafter, Williams met with Richardson and McConnell. Williams asked McConnell for some identification to insure that he was not a police officer. McConnell refused to present any identification but showed Williams that he had the money to purchase the crack. After seeing the money, Williams told McConnell that he did not have the crack with him and that “another guy” would bring it. Williams then made a telephone call and returned, stating that the crack would arrive in a few minutes.
While they were waiting for the crack to arrive, McConnell stated that, according to Richardson, Williams, who resided in Los Angeles, was distributing between one-half and one pound of crack a week in Las Vegas. McConnell then asked Williams if he could supply one-half pound a week, and Williams responded that he could “if the money was right.”
Shortly thereafter, Davis drove into the parking lot where the three were waiting. The three walked over to Davis’ car, and Williams told Davis to “get the dope out.” Davis retrieved an athletic sock and got out of the car. Williams then instructed Davis to make the sale in McConnell’s car.
Once in McConnell’s car, Davis removed a bag from inside the athletic sock and gave it to McConnell. McConnell examined the contents of the bag and recognized it to be crack.[1] McConnell then stated that he would pay for the crack in Davis’ car. When Davis got out of McConnells car, McConnell signaled to nearby surveillance agents, who came to the scene and arrested Davis and Williams.
Davis and Williams called Richardson, who demanded $200.00 before talking to defense counsel, as their only witness. Richardson testified that McConnell instructed him to arrange a crack deal with “gang bangers,” whom he said McConnell described as young African-American males from the Los Ange- *907 les area. McConnell denied ever making this statement.
Richardson also testified that, from the first time he met Williams in October 1991, he was “cultivating” Williams for participation in the crack deal and that this cultivation continued each of the times that Williams returned to Las Vegas thereafter. Richardson, who was a noted gambler in Las Vegas, treated both Williams and his wife to various shows, hotels and restaurants. Richardson also purchased clothing for Williams and made it clear that he would be willing to do additional favors for him. During one of Williams’ visits to Las Vegas, at Williams’ birthday party, Richardson met Davis for the first time and treated both him and Williams to dinner and bought them athletic equipment. Richardson testified that he treated Davis and Williams generously because he wanted them to feel indebted to him.
Richardson raised the subject of a possible crack deal with Williams during some of these occasions. Initially, Williams refused, saying he “did not do that type of thing.” The record shows that Williams continued to refuse Richardson until he was asked again on the night of his birthday party to provide crack for a “friend” of Richardson’s. There is no record of Richardson’s asking Davis to take part in a crack deal.
The government showed during cross-examination that Richardson had a reason to be biased against the government. In addition to his $500.00 fee, one of the reasons that Richardson set up the crack deal leading to Davis’ and Williams’ arrests was' because he hoped that McConnell would testify on his behalf at his upcoming criminal trial. However, McConnell did not testify for Richardson, apparently because Richardson did not complete other crack deals for the DEA. Richardson admitted he was angry at McConnell for not testifying for him.
At the end of trial on July 7,1992, the jury was instructed regarding, among other things, Davis’ and Williams’ entrapment defense. On July 8, 1992, the jury returned guilty verdicts against both defendants on both counts. At Davis’ and Williams’ sen-tencings, the district court adopted the findings and recommendations contained in their presentence reports and sentenced them to 188 and 240 months imprisonment, respectively.
Davis and Williams now appeal to this court.
II.
Davis and Williams raise the following issues regarding the legality of their convictions:
A. Entrapment
Both Davis and Williams argue that they were entrapped as a matter of law. We review this question of law de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en bane), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
There are two elements to the defense of entrapment: (1) government inducement of the crime, and (2) the absence of predisposition on the part of the defendant. United States v. Skarie, 971 F.2d 317, 320 (9th Cir.1992). Where the government has induced an individual to break the law and the defense of entrapment is at issue, the prosecution must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to first being approached by government agents. See Jacobson v. United States, — U.S. -, -, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992).
Inducement must be provided by someone acting for the government.[2] United States v. Becerra, 992 F.2d 960, 963 (9th Cir.1993) (citation omitted). Inducement can be any government conduct creating a substantial risk that an otherwise law-abiding *908 citizen would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. See United States v. Garza-Juarez, 992 F.2d 896, 909 (9th Cir.1993) (citations omitted).
In evaluating predisposition, the court reviews five factors: (1) the character and reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether .the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government’s inducement. Becerra, 992 F.2d at 963 (citation omitted). Although none of these five factors controls, the most important is the defendant’s reluctance to engage in criminal activity. Id.
Generally, “the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the guilt or innocence of the accused.” Sherman v. United States, 356 U.S. 369, 377, 78 S.Ct. 819, 823, 2 L.Ed.2d 848 (1958); see also Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); United States v. Smith, 802 F.2d 1119, 1124 (9th Cir.1986); United States v. Griffin, 434 F.2d 978, 981 (9th Cir.1970), cert. denied, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971). It is inappropriate for an appellate court to determine whether a defendant was entrapped when such a determination would necessarily entail “choosing between conflicting witnesses” and “judging credibility.” See Sherman, 356 U.S. at 373, 78 S.Ct. at 821. Therefore, we should not disturb the jury’s finding unless, viewing the evidence in the light most favorable to the government, no reasonable jury could have concluded that the defendants were predisposed to commit the charged offenses. See United States v. Hart, 963 F.2d 1278, 1283 (9th Cir.1992). In short, to justify an acquittal based on entrapment as a matter of law, there must be undisputed evidence that Davis and Williams were induced to commit crimes by the government and were not predisposed to do so. See Skarie, 971 F.2d at 320; Hart, 963 F.2d at 1283; Smith, 802 F.2d at 1124.
The record shows that, at best, Davis was only “derivatively entrapped” and should not have been allowed to present an entrapment defense at all. See United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 801 (1989); United States v. Emmert, 829 F.2d 805, 809 (9th Cir.1987). Although even slight evidence of inducement is sufficient to allow a defendant to present an entrapment defense, see Becerra, 992 F.2d at 963, there is absolutely no evidence that Richardson even asked Davis to take part in a crack deal. Davis certainly was not entitled to a finding of entrapment as a matter of law.
With respect to Williams, the dispute in the record regarding entrapment is manifest. Williams relies on Richardson’s testimony that he was “wined and dined” and pressured to repay Richardson’s generosity by selling crack to McConnell. However, Richardson’s testimony, in addition to being of questionable reliability, stood in obvious conflict with McConnell’s testimony and the facts related therein suggesting that Williams had previously sold crack. “[T]he resolution of such conflicting assertions of fact relevant to the entrapment issue is a credibility question for the jury.” Griffin, 434 F.2d at 981. This factual dispute precludes a determination that, as a matter of law, the government entrapped Williams.
B. Entrapment Instruction
Williams contends that the district court’s jury instructions regarding entrapment were inconsistent with the Supreme Court’s holding in Jacobson. Because he withdrew his objection to these instructions,[3] we review for plain error. United States v. Arias-Villanueva, 998 F.2d 1491, 1504 (9th Cir.1993) (citation omitted). Reversal based on plain error is exceptional and occurs only when necessary to prevent a miscarriage of *909 justice or to preserve the integrity and reputation of the judicial process. Id. 998 F.2d at 1505 (citation omitted).
Williams argues that the district court’s entrapment instructions did not state, as required by Jacobson, that the government was required to show that he was predisposed to commit his crimes prior to his initial contact with government agents. See Jacobson, — U.S. -, 112 S.Ct. at 1540; Skarie, 971 F.2d at 320. The instructions given by the district court stated the following:
A person is entrapped when the person has no previous intention to violate the law and is persuaded to commit a crime by government agents.
On the other hand, where a person is already willing to commit a crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.
A solicitation, request or approach by law enforcement officers to engage in criminal activity standing alone is not inducement. Law enforcement officials are not precluded from utilizing artifice and stealth, such as the use of decoys and undercover agents, in order to apprehend persons engaged in criminal activities, provided they merely afford opportunities or facilities for the commission of the offense by one predisposed or ready to commit it.
The district court’s instructions are inconsistent with Jacobson because they equate a person already willing to commit a crime with a person predisposed to commit a crime prior to being approached by the government. Under the district court’s instructions, the jury could have reasonably found that Williams was predisposed because he was willing to sell crack at the time Richardson arranged the crack deal. The jury could have made this finding without regard to whether Williams was willing to sell crack before he met Richardson. Therefore, because Jacobson and our subsequent decisions dictate that a defendant cannot lawfully develop a disposition during the course of dealing with the government, cf. United States v. North, 746 F.2d 627, 630 (9th Cir.1984), cert. denied, 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985) (holding pre-Jacobson that such development was possible), the district court’s instructions misstate the law. See Jacobson, — U.S. at -, 112 S.Ct. at 1540; Skarie, 971 F.2d at 320; Hart, 963 F.2d at 1283.
Nonetheless, reversal is not required. This case does not present an instance in which a miscarriage of justice or an affront to the judicial process exists. First, Williams was allowed to argue in closing that the instructions given required the government to prove predisposition consistent with Jacobson. That the instructions given were reconcilable with Jacobson in this manner reaffirms the Supreme Court’s observation that Jacobson does not constitute “an innovation in entrapment law,” — U.S. at - n. 2, 112 S.Ct. at 1541 n. 2, and supports a finding that the district court’s instructions did not result in plain error.
Second, Williams has made only a minimal showing of inducement. He argues that Richardson’s generosity left him with a sense of obligation to him that induced him to sell crack. We have rejected claims of entrapment based on similarly implausible theories of inducement. See United States v. Citro, 842 F.2d 1149, 1152 (9th Cir.), cert. denied, 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988) (holding that defendants who were treated to expensive dinners and offered money were not adequately induced to show that they were not predisposed).
Third, contrary to Williams’ argument on appeal, the jury would have still been able to consider evidence obtained after his initial contact with Richardson in determining whether he was predisposed. Nothing in Jacobson precludes the consideration of evidence gathered during the government’s investigation, and we have recently noted that, under Jacobson, “evidence of predisposition may arise both before the government’s initial contact and during the course of dealings.” United States v. Garza-Juarez, 992 F.2d at 908. Jacobson, therefore, does not require the exclusion of evidence of predisposition but only alters the manner in which the factfinder evaluates it.
Consequently, the jury would have been able to consider all of the same evidence it *910 did in determining predisposition, and this evidence strongly supports a finding that Williams was predisposed. Specifically, the evidence suggested that Williams sold crack in Las Vegas before he was targeted by Richardson and McConnell. Williams’ actions during the transaction belied the contention that he had no experience selling drugs: he asked McConnell for identification and insured that McConnell had the money before summoning Davis to bring the crack. Cf. Citro, 842 F.2d at 1152 (relying on similar facts in finding the defendant was predisposed). Further, although Williams did not live in Las Vegas, he was able to obtain the crack quickly and with no apparent difficulty. Finally, Williams admitted that he could supply crack on a weekly basis. Thus, the jury would have found Williams to be predisposed even under Jacobson and would have rejected his entrapment defense. No plain error exists.
C. Selective Prosecution
Davis argues that the district court erred in denying his motion to dismiss because he was subject to unconstitutional selective prosecution. We have recently held that a prosecutor’s charging decision cannot be judicially reviewed absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right. See United States v. Diaz, 961 F.2d 1417, 1420 (9th Cir.1992); United States v. Redondo-Lemos, 955 F.2d 1296, 1300-01 (9th Cir.1992). To establish a prima facie case of selective prosecution, a defendant must show both (1) that others similarly situated have not been prosecuted, and (2) that the prosecution is based on an impermissible motive, i.e. discriminatory purpose or intent. United States v. Gutierrez, 990 F.2d 472, 475 (9th Cir.1993). Because this inquiry is essentially a factual determination, we review for clear error. Id.
Davis relies on Richardson’s testimony that McConnell wanted the targets of the operation to be African-American. However, this fact was disputed at trial. McConnell denies having ever made such a statement, and the government showed that Richardson, who was paid for his testimony and had a reason to be biased against the government, may not have been truthful. The court therefore did not clearly err in finding that Davis failed to make a prima facie showing of selective prosecution.
Davis also argues that he was improperly prosecuted because the government targeted a specific quantity of cocaine base. However, his unsupported allegations do not support a finding of selective prosecution. See Redondo-Lemos, 955 F.2d at 1300-01. Davis’ allegations do not even support the novel defense of sentence entrapment, which requires a defendant to show that the government engaged in outrageous official conduct which overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs and the resulting sentence of the entrapped defendant. See United States v. Barth, 990 F.2d 422, 424 (8th Cir.1993).
D. Ineffective Assistance of Counsel
Williams argues that because his counsel stipulated that the cocaine seized by McConnell was cocaine base, he received ineffective assistance of counsel. This issue raises mixed questions of law and fact that we review de novo. United States v. Molina, 934 F.2d 1440, 1447 (9th Cir.1991).
The Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983), set forth a two prong test for determining whether a criminal defendant received ineffective assistance of counsel. We must determine (1) whether the performance of counsel was so deficient that he was not functioning as “counsel” as guaranteed under the Sixth Amendment; and (2) whether this deficient performance prejudiced the defendant by depriving him of a fair trial. See id. at 691-92, 104 S.Ct. at 2066-67. In determining whether counsel’s performance was deficient, we apply an objective standard of reasonableness, indulging a strong presumption that a counsel’s conduct falls within the wide range of reasonable professional assistance. Id. at 689, 104 S.Ct. at 2065.
*911 In most instances, claims of ineffective assistance of counsel are better addressed in collateral proceedings under 28 U.S.C. § 2255. See United States v. Robinson, 967 F.2d 287, 290 (9th Cir.1992). However, we may review such claims on direct appeal if (1) the record is sufficiently developed to permit review and determination of the issue or (2) the legal representation is so inadequate that the defendant was obviously denied his Sixth Amendment right to counsel. Id.
As the record before us is sufficiently developed, we can review Williams’ claim. Although Williams’ counsel stipulated that the 108 grams of cocaine seized was cocaine base, McConnell nonetheless identified it as crack, a cocaine base,[4] at trial. McConnell was also extensively cross-examined regarding his identification. Therefore, even though Williams would have received a lesser sentence if the district court found that the cocaine seized was cocaine powder, see 21 U.S.C. 841(b)(1)(A), there is no showing that counsel’s decision constitutes deficient performance. Rather, it appears that counsel sought to prevent the further presentation of harmful evidence to the jury and made a reasonable strategic decision toward that end.
Williams relies on evidence that McConnell asked him if the cocaine “would blow a hole in your nose.” But the import of this statement is arguable; it does not show that the cocaine was powder cocaine, which is ordinarily snorted, rather than crack. Moreover, the statement is directly contradicted by the evidence at trial linking Williams with the sale of crack as well as McConnell’s testimony that the seized drug was crack. Williams did not receive ineffective assistance of counsel.
E. Constitutionality of Offense Statute
Williams challenges the constitutionality of one of the statutes pursuant to which he was convicted, 21 U.S.C. § 841(a)(1), arguing that this statute is unconstitutionally vague and ambiguous regarding its undefined use of the term “cocaine base.” We review challenges to the constitutionality of criminal statutes de novo. United States v. Harding, 971 F.2d 410, 412 (9th Cir.1992), cert. denied, — U.S. -, 113 S.Ct. 1025, 122 L.Ed.2d 170 (1993) (citation omitted). To prove that section 841(a)(1) is unconstitutionally vague, Williams must show that the statute (1) does not define the conduct it prohibits with sufficient definitiveness and (2) does not establish minimal guidelines to govern law enforcement. See Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Additionally, because Williams’ vagueness challenge does not implicate any First Amendment interest, he must show that the statute is vague as it is applied in his case. See Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988).
We rejected an argument identical to Williams’ in United States v. Shaw, 936 F.2d 412 (9th Cir.1991). In Shaw we found that, although it is not defined in either the statute itself or the relevant sentencing guideline, the term “cocaine base” is not unconstitutionally vague because the substances it denominates are distinguishable from cocaine hydrochloride, which is powder cocaine. Id. at 416. Reviewing the legislative history, we defined “cocaine base” as including crack. Id. at 415-16. Shaw is consistent with our prior decision, United States v. Van Hawkins, 899 F.2d 852 (9th Cir.1990), in which we stated that “ ‘cocaine base’ is cocaine that contains an active hydroxylion. As such, it is distinguished from cocaine salts. The term cocaine base encompasses ‘crack.’ ” Id. at 854, n. 2. Based on this definition, we held in Van Hawkins that section 841(a)(1) was not unconstitutionally vague. Id. at 854.
Despite the preclusive effect of Shaw and Van Hawkins, Williams argues that, because other circuits have defined cocaine base somewhat differently, see e.g., United States v. Jackson, 968 F.2d 158, 162-63 (2d Cir.), cert. denied, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992); United States v. Lopez-Gil, 965 F.2d 1124, 1135 (1st Cir.), cert. denied, — U.S. -, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992) *912 (per curiam); United States v. Turner, 928 F.2d 956, 960 (10th Cir.), cert. denied, — U.S. -, 112 S.Ct. 230, 116 L.Ed.2d 187 (1991); United States v. Avant, 907 F.2d 623, 625-27 (6th Cir.1990), our decisions actually support a conclusion that section 841(a)(1) is unconstitutionally vague. However, “[j]ust because other courts of appeals differ in their definitions of a terms does not mean that the term is void for vagueness.” Jackson, 968 F.2d at 163. Moreover, none of the other circuits define cocaine base in a substantially different manner than Shaw and Van Hawkins; these courts, while relying on different chemical terminology, all conclude that crack, the type of cocaine at issue in this ease, is a cocaine base. Therefore, it is clear that section 841(a)(1), as it applies to Williams, adequately defines “the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” Kolender, 461 U.S. at 357, 103 S.Ct. at 1858 (citations omitted). Williams’ constitutional challenge to section 841(a)(1) therefore fails.
III.
Davis and Williams raise the following issues regarding the legality of their sentences:
A. Sentencing Finding
The district court adopted the factual findings of Davis’ presentence report, and he was sentenced based on the finding that he distributed 175 grams of crack. However, after Davis’ sentencing, the probation officer who prepared his presentence report acknowledged that this finding was erroneous and that the actual amount of crack distributed was 108 grams. Therefore, Davis’ offense level under the sentencing guidelines should have been set at 32 instead of 34, and his sentencing range should have been 152 to 188 months instead of 188 to 235 months. Given the district court’s willingness to sentence Davis at the low end of the guideline range, this error probably resulted in Davis’ receiving a three year longer sentence than he otherwise would have.
Consequently, even though defense counsel did not object to this factual inaccuracy at sentencing, we find plain error and remand for resentencing based on the correct amount of crack.[5] See United States v. Skillman, 922 F.2d 1370, 1379 (9th Cir.1990), cert. dismissed, — U.S. -, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991) (holding that prejudice is shown where a sentencing error may affect the determination of sentence).
B. Acceptance of Responsibility
Davis argues that the district court erred in denying him a downward adjustment for acceptance of responsibility. We review issues concerning the application of the sentencing guidelines de novo and review the underlying facts found by the district court for clear error. United States v. Uzelac, 921 F.2d 204, 206 (9th Cir.1990) (citations omitted); see U.S.S.G. § 3E1.1, application note 5 (stating that “the determination of the sentencing judge is entitled to great deference”).
At the time of Davis’ sentencing, the sentencing guidelines stated that “[i]f a defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by two levels.” U.S.S.G. § 3El.l(a).[6] Davis argues that because he did not contest that he committed the offense but went to trial only to present his entrapment defense, he qualifies for this decrease. Davis relies on paragraph 12 of his presen-tenee report, which states in part that “Davis has acknowledged that he was involved in the instant offense and went to trial to exercise his constitutional right.”[7]
*913 The district court denied Davis’ request, adopting the finding of the presentence report, which states that “[t]here is no evidence that defendant Davis exhibited conduct that would demonstrate an acceptance of responsibility.” In making this finding, the presen-tence report relies on application note 2 to section 3E1.1, which states in part that the “adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.” While application note 2 acknowledges that, in rare circumstances, a defendant who goes to trial may be entitled to a downward adjustment, it indicates that this exception only applies to a defendant who contests some issue other than his factual guilt at trial.
We note that the district court could not have found that Davis had not accepted responsibility solely because he presented an entrapment defense at trial. In United States v. Molina, 934 F.2d 1440 (9th Cir.1991), we held that denial of a downward adjustment under section 3E1.1 may not be premised merely upon the presentation of an entrapment defense. Id. at 1450. We further stated that “we do not hold that the defense of entrapment and a reduction for acceptance of responsibility are necessarily and in all cases incompatible. The sentencing judge must consider all the evidence bearing on the issue of the defendant’s contrition—or lack thereof—and decide whether he has made the requisite showing.” Id. at 1451; see also United States v. Marquardt, 949 F.2d 283, 286 (9th Cir.1991); United States v. Fleener, 900 F.2d 914, 918 (6th Cir.1990).[8]
Yet contrary to Davis’ argument, the district court’s finding rests on a proper basis and is wholly consistent with Molina. The record clearly supports a finding that Davis was not entitled to a downward adjustment. While Molina dictates that the presentation of an entrapment defense cannot prejudice Davis, there is no affirmative evidence of contrition in the record. Davis has therefore failed to meet his burden to clearly demonstrate acceptance of responsibility for his offense under section 3E1.1(a). See Skillman, 922 F.2d at 1378-79.
C. Minimal Participation
Davis argues that the district court erred in refusing to decrease his offense level based on his role in the offense under U.S.S.G. § 3B1.2. A district court’s finding that a defendant does not qualify for minor or minimal participant status is heavily dependent on the facts of the particular case, and we uphold such a finding unless it is clearly erroneous. United States v. Flores-Payon, 942 F.2d 556, 560 (9th Cir.1991). The defendant has the burden of proving that he is entitled to a downward adjustment based on his role in the offense by a preponderance of the evidence. See United States v. Sanchez, 908 F.2d 1443, 1449 (9th Cir.1990).
Initially, Davis complains about the ambiguous state of the record. The district court adopted the findings of the presentence report that, after being telephoned by Williams, Davis arrived at the parking lot in a separate car, took the cocaine from that car, and gave the cocaine to McConnell. Although the district court did not make an explicit determination of the nature of Davis’ role based on these facts, none was required. The district court has no duty to make a *914 finding regarding a defendant’s relative culpability; it only needs to make its resolution of disputed matters clear. See Flores-Payon, 942 F.2d at 561; United States v. Rigby, 896 F.2d 392, 394-95 (9th Cir.1990) (both holding that a court’s adopting a presentence report recommendation and supporting findings constitutes a sufficiently clear ruling). There were no unresolved factual matters, and it is clear that the court found Davis to be neither a minor nor minimal participant.
Davis argues that the facts found by the district court show that he was a courier, but we have held that the “fact that a defendant acted as a drug courier does not mean his role was minimal or minor.” Ajala v. United States Parole Commission, 997 F.2d 651, 656 (9th Cir.1993) (citing United States v. Lui, 941 F.2d 844, 849 (9th Cir.1991); United States v. Zweber, 913 F.2d 705, 710 (9th Cir.1990)). Just because a defendant may be less culpable than other participants in an offense, he is not necessarily entitled to a minimal or minor role adjustment under section 3B1.2. See Ajala, 997 F.2d at 656 (citation omitted). Moreover, this court has consistently stated that a downward adjustment under section 3B1.2 is to be used infrequently and only in exceptional circumstances. See United States v. Hoac, 990 F.2d 1099, 1106 (9th Cir.1993); United States v. Christman, 894 F.2d 339, 341 (9th Cir.1990).
Although his courier status does not automatically entitle him to a downward adjustment, Davis is correct in asserting that one who is solely a courier may be entitled to a downward adjustment under section 3B1.2. Application note 2 to section 3B1.2 indicates that a one employed as a courier for a single small transaction could be a minor or minimal participant. Additionally, we have stated that whether one who is solely a courier is automatically entitled to a reduction for his role in the offense is an open question. See Hoac, 990 F.2d at 1106; Flores-Payon, 942 F.2d at 561; Rigby, 896 F.2d at 394. In prior decisions, we have denied downward adjustments to defendants who were couriers where some additional factor showing that they were not a minor or minimal participants existed. See Flores-Payon, 942 F.2d at 561 (defendant attended drug negotiations and commented on the quality of the drugs); Hoac, 990 F.2d at 1106 (defendant owned trading company and leased warehouse to which drugs were delivered); Lui, 941 F.2d at 849 (defendant imported a substantial amount of drugs).
As in our prior decisions, the record here shows that, although he was a courier, Davis was still not a minor or minimal participant. Davis knew that he was carrying drugs and was prepared to accept the $6,400.00 from McConnell. Similarly, in Zweber we found that the defendant was not entitled to a downward adjustment because he knew he was transporting cocaine and received money in return, demonstrating that he was trusted with responsibility. 913 F.2d at 710. As the district court’s findings are not clearly erroneous, our decision in Zweber dictates that Davis is not entitled to a downward adjustment under section 3B1.2.
D. Constitutionality of Sentencing Enhancement Statutes
Williams argues that the statutes pursuant to which his sentence was enhanced, 21 U.S.C. §§ 841(b)(1)(A) and 851(e), are unconstitutional.
1. 21 U.S.C. § 841(b)(1)(A)
Williams’ equal protection challenge to section 841(b)(1)(A) is precluded by the law of this circuit. See United States v. Williams, 978 F.2d 1133, 1136 (9th Cir.1992), cert. denied, — U.S. -, 113 S.Ct. 1606, 123 L.Ed.2d 168 (1993); Harding, 971 F.2d at 412-14. Williams argues that this statute, which punishes offenses involving 50 grams or more of cocaine base to the same extent as offenses involving 5 kilograms or more of cocaine, violates equal protection, but in Harding we rejected a nearly identical equal protection challenge. We stated that “[section 841(b)(1) implicates neither a suspect class nor a fundamental right. The statute permissibly differentiates on the basis of type of the drug and quantity, providing higher penalties for offenses involving cocaine base than for offenses involving similar amounts of powder cocaine.” Harding, 971 F.2d at 412 (citation omitted). After determining that an equal protection challenge to *915 the statute was subject only to rational basis scrutiny, we further stated that
Congress’s decision to punish the sale of crack more severely than the sale of powder cocaine was based on a broad and legitimate basis. Although crack and powder cocaine are different forms of the same drug, the routes of administration, their physiological and psychological effects, and the manner in which they are sold set the two forms of the drug apart.... [Cjrack offers an easy, relatively inexpensive, and potent means for first time users as well as addicts to experience a temporary high which leaves them craving more. While powder cocaine was the drug of choice for the affluent, crack has brought cocaine to the streets, catering to the habits of both rich and poor in epidemic proportions.
Id. at 413 (citations and footnotes omitted).
Therefore, “the penalties embodied in [section 841(b)(1)(A) ] further the legitimate government interest of eliminating controlled substance distribution and abuse.... If the extent of the problem posed by the sale of crack and the need for more severe penalties than for powder cocaine are not clearly evident, these issues are at least highly debatable. This is enough to prevent invalidation of the statutory classification.” Id. at 414 (citation omitted).
In addition to Harding, we have held in other cases that section 841(b)(1)(A) is constitutional. See Williams, 978 F.2d at 1136; Shaw, 936 F.2d at 416; Van Hawkins, 899 F.2d at 854; United States v. Malone, 886 F.2d 1162, 1166 (9th Cir.1989); United States v. Savinovich, 845 F.2d 834, 839 (9th Cir.), cert. denied, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). And, as we noted in Harding, every circuit having addressed a claim similar to Williams’ has rejected it. See United States v. Lawrence, 951 F.2d 751, 755 (7th Cir.1991); United States v. House, 939 F.2d 659, 664 (8th Cir.1991); United States v. Avant, 907 F.2d 623, 627 (6th Cir. 1990); United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir.1990); United States v. Cyrus, 890 F.2d 1245, 1248-49 (D.C.Cir.1989); United States v. Solomon, 848 F.2d 156, 157 (11th Cir.1988). Thus, Williams’ argument that section 841(b)(1)(A) is unconstitutional is completely foreclosed by precedent.
2. 21 U.S.C. § 851(e)
Section 851(e) provides that “[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction which occurred more than five years before the date of the information alleging the prior conviction.” Because Williams had been convicted of a felony drug conviction on April 30, 1986, the mandatory minimum sentence he could have received under section 841(a)(1)(A) was twenty years instead of ten. As this prior conviction became final more than five years before the government filed its information on July 6, 1992, section 851(e) precluded Williams from contesting its validity.
Williams argues that 21 U.S.C. § 851(e) violates the Equal Protection and Due Process clauses of the Constitution because it subjects him to increased punishment without any opportunity to challenge the validity of prior convictions. In United States v. Vea-Gonzales, 986 F.2d 321, 327 (9th Cir.1993) (construing U.S.S.G. §§ 4A1.2, 4B1.2) we held that “the Constitution requires that defendants be given the opportunity to collaterally attack prior convictions which will be used against them at sentencing.” Section 851, in conjunction with 21 U.S.C. 841, determines how sentencing courts should consider prior federal drug convictions for purposes of enhancing sentences. Because this statutory scheme is closely related to the use and purposes of the Sentencing Guidelines, our holding in Vea-Gonzales applies.
Section 851(e) bars the constitutionally protected opportunity to challenge the validity of prior convictions which will be used to enhance a criminal defendant’s sentence which are older than five-years old. To the extent that courts impose harsher sentences based on prior convictions, section 851(e)’s time bar affects the due process and liberty rights of individuals. See id.; United States v. Salerno, 481 U.S. 739, 750-51, 107 S.Ct. 2095, 2103-04, 95 L.Ed.2d 697 (1987). Since section 851(e)’s time-based classification affects such fundamental rights the classification must be justified by a compelling *916 government interest. See Plyler v. Doe, 457 U.S. 202, 216-17, 102 S.Ct. 2382, 2394-95, 72 L.Ed.2d 786 (1982).
Although no court has determined whether there is a compelling justification for section 851(e),[9] it is clear that the government has several interests in barring challenges to prior convictions. There are costs associated with keeping court records indefinitely. “Without section 851(e)’s five year limitation period, records of prior convictions, going back many years ... would have to be preserved.” United States v. Williams, 954 F.2d 668, 673 (11th Cir.1992) (citing Cirillo v. United States, 666 F.Supp. 613, 616 (S.D.N.Y.1987)) (internal punctuation omitted). There are evidentiary concerns. “The likelihood is that those persons who played a role, whether on behalf of the prosecution, defense or witnesses, no longer would be able to give direct testimony as to alleged events attendant upon the entry of the plea under attack.” Id. And there are “thorny procedural difficulties” as sentencing hearings take on the burden of coping with strategic uses of challenges. See U.S. v. Vea-Gonzales, 986 F.2d 321, 328 (9th Cir.1993). For these reasons the Eleventh Circuit, in’ Williams, supra, held that “Section 851(e) is wholly reasonable, both to effectuate the legitimate purposes of enhanced sentencing for recidivists, and to eliminate a host of practical problems with respect to ancient records absent such a provision.” 954 F.2d at 673; cf. United States v. Kinsey, 843 F.2d 383, 391-92 (9th Cir.), cert. denied, 487 U.S. 1223, 108 S.Ct. 2882, 101 L.Ed.2d 916 (1988) (finding that sections 841(b)(1) and 851(e) did not violate defendants’ right to a jury trial on the validity of their prior convictions because the statutes “merely set forth aggravating circumstances the presence of which require a trial court to increase the sentence of a habitual offender”).
Nonetheless, what may seem wholly reasonable is not always compelling. The social costs of warehousing court records in order to protect constitutional privileges are less troublesome than the tremendous social costs associated with warehousing individuals on the basis of constitutionally infirm convictions. The problems of stale evidence, although real, are not unknown to our courts in other contexts, such as when a statute of limitations is tolled. And as Vea-Gonzales notes, “If enforcement of constitutional rights sometimes undermines efficiency, it is the price we all pay for having a constitution.” 986 F.2d at 328. This court in Vea-Gonzales has recognized the constitutional right of criminal defendants to challenge pri- or convictions which will be used against them at sentencing. That right requires us to find that section 851(e)’s time bar to the exercise of that right has no compelling government interest and is therefore unconstitutional.
We recognize that at first glance our conclusion seems to create unnecessary practical problems for the administration of justice. For example, some courts have worried that by allowing challenges to prior convictions at sentencing our sentencing hearings may become the equivalent of section 2255 hearings. See United States v. Avery, 773 F.Supp. 1400, 1406-07 (D.Or.1991). But this concern is unfounded because it ignores how our pri- or holdings and the relevant statutory framework for dealing with challenges to prior convictions at sentencing hearings have already addressed such practical concerns.
For example, although this circuit recognizes a constitutional right to challenge the validity of prior convictions used to enhance sentencing at the sentencing hearing, such challenges do not rise to the equivalent of full collateral attacks: “Such challenges test a conviction’s validity solely for the purpose of using it as a basis for enhanced punishment, and do not have preclusive effect in state or federal habeas corpus proceedings challenging the same conviction.” United States v. Mims, 928 F.2d 310, 312 (9th Cir.1991) (construing U.S.S.G. §§ 4A1.2 and 4B1.2 challenges to prior convictions at sentencing hearing); accord United States v. McGlock-lin, 8 F.3d 1037 (6th Cir.1993); United States v. Jones, 907 F.2d 456, 468-69 (4th Cir.1990), *917 cert. denied, 498 U.S. 1029, 111 S.Ct. 688, 112 L.Ed.2d 675 (1991).
Although we hold section 851(e) unconstitutional, we- leave the rest of section 851 undisturbed. Therein sentencing courts will find adequately detailed procedures regarding a criminal defendant’s challenge to prior convictions, including how to set forth such claims, the burden of proof, waiver, etc. 21 U.S.C. § 851(c). These statutory procedures appear to provide adequate and economical procedures for sentencing courts faced with challenges to prior convictions under this section.
Therefore, we vacate Williams’ sentence and we remand for resentencing. At his resentencing Williams may challenge the validity of those prior convictions used to enhance his sentence regardless of when they occurred.
Davis’ and Williams’ convictions are AFFIRMED. We VACATE their sentences and REMAND to the district court for re-sentencing.

. The parties stipulated that the substance was cocaine base on the second day of trial.

. The government argues on appeal that Richardson was not acting as a government agent. But the government cannot make use of an informer and then claim disassociation. See Sherman v. United States, 356 U.S. 369, 375, 78 S.Ct. 819, 822, 2 L.Ed.2d 848 (1958). Where, as here, the informant was clearly acting on behalf of the government before inducing a defendant, the informant is an agent of the government. See id.; United States v. Bushy, 780 F.2d 804, 806-07 (9th Cir.1986) (holding that inducement occurring before the informant was directed or supervised by the government could not support an entrapment defense).

. Williams did not contest the court's entrapment instructions so long as he was able to argue in closing that the government had to prove entrapment consistent with Jacobson. He was allowed to do this.

. See section I.E, infra.

. The government does not contest remand on this basis.

. This section was amended, effective November 1, 1992. Section 3E1.1 now provides for a two level decrease in the offense level if "the defendant clearly demonstrates acceptance of responsibility for his offense.”

.We have has recently stated that "3E1.1 does not allow the judge to weigh against the defendant the defendant’s exercise of constitutional or statutory rights.” United States v. LaPierre, 998 F.2d 1460, 1467 (9th Cir.1993) (quoting United States v. Rodriguez, 959 F.2d 193, 197 (11th Cir.1992), cert. denied, -U.S. -, 113 S.Ct. *913 649, 121 L.Ed.2d 563 (1992); see also United States v. Watt, 910 F.2d 587, 592 (9th Cir.1990). However, denial of a reduction is appropriate even when the lack of establishing evidence results from the exercise of a constitutional right. See LaPierre, 998 F.2d at 1468.

. Molina relied on the former version of application note 2. This version stated in relevant part that "[c]onviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he exercises his constitutional right to a trial.” The Supreme Court recently indicated that amended commentary to sentencing guidelines prevail over prior judicial constructions. See Stinson v. United States, - U.S. -, -, 113 S.Ct. 1913, 1916, 123 L.Ed.2d 598 (1993). However, there is no indication that, as amended, application note 2 has a substantially different meaning than it did previously. See Molina, 934 F.2d at 1451, n. 13 (noting the consistency of the new version).

. In United States v. Pallais, 921 F.2d 684 (7th Cir.1990), cert. denied, - U.S. -, 112 S.Ct. 134, 116 L.Ed.2d 101 (1991), the Seventh Circuit recognized, while not addressing the issue, that section 851(e) may be unconstitutional for the reason addressed in this appeal. See id. at 692.