# CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Commonwealth of Virginia

v.

Dennis Wayne Wolf

December 9, 2005

Case No. CR05T34033-00

BY JUDGE H. VINCENT CONWAY, JR.

This matter is before the court on appeal from the General District Court following the conviction of the defendant for operating a motorcycle "without approved helmet" in violation of § 46.2-910 of the Code of Virginia. This statute provides, in its first sentence, that every person operating a motorcycle shall wear a protective helmet. In the third sentence of this statute, which is the focus of this opinion, a requirement is imposed that all protective helmets meet or exceed the standards and specifications of the Snell Memorial Foundation, the American National Standards Institute, Inc., or the federal Department of Transportation. These entities will be referred to as Snell, ANSI, and DOT, respectively, herein.

At trial, the defendant challenged the constitutionality of the relevant statute on the grounds that (1) it is an impermissible delegation of legislative authority by the General Assembly to other entities, governmental and private, which then establish standards defining criminal conduct, both current and future, without continuing legislative oversight, and (2) that the statute, as written, is vague and ambiguous and does not provide sufficient due process

notice so as to allow the citizen to know what is required or what is proscribed. No challenge is made to the intentional aspects of the statute in its promotion of safety for riders and the general public.

It is well established that challenges to state statutes which do not involve First Amendment freedoms must be examined as they apply to the facts of the case at hand. *United States v. Mazurie*, 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1075). A litigant must also have standing to raise such a challenge; he must be adversely affected by the statute. If a statute clearly proscribes the conduct of the defendant, he cannot challenge it for vagueness. Since this statute unambiguously requires motorcycle riders to wear protective helmets, an individual not wearing a helmet would have no legal standing to attack this statute on the grounds of vagueness. In this case, however, it is undisputed that the defendant was wearing a helmet. The court finds therefore that the defendant has standing to challenge the standards that resulted in his citation for wearing a "not approved helmet."

### Statement of the Facts

On May 11, 2005, a motorcycle patrol officer observed the defendant operating a motorcycle with a helmet. He noticed how it "fit on the head" and saw no visible padding extending out from the edge. After stopping the operator, he examined the helmet and described it as having a fiberglass shell, with a thin-like liner inside. Tr. 6. He looked for the Snell or DOT stickers, which he stated must be affixed to the helmet. Tr. 8. He also noticed the weight of the helmet, indicating that his helmet was heavier and had a polystyrene liner, approximately one inch thick. The officer also provided the following information: a Snell helmet does not necessarily meet DOT standards; a DOT helmet does not necessarily meet Snell standards; that a helmet could meet DOT standards and still not have a sticker, since DOT does not approve helmets, but allows manufacturers to self-certify compliance if they wish to display the DOT sticker; that neither the Snell or DOT standards mention that a one inch liner is required or specifically address any required weight of the helmet; that he had never been able to locate the ANSI standards as they relate to helmets; and that in addition to his police training, some of his information was obtained from the Internet on public safety websites interpreting what these different standards require.

The defendant called Bruce Biondo, Program Manager, Virginia Rider Training Program, Department of Motor Vehicles. Mr. Biondo supervises the program which trains citizens how to safely operate a motorcycle in the Commonwealth and has been riding motorcycles for approximately thirty-two years. He testified that he cannot tell whether a helmet meets the standards by

looking; that he did not know anything about the ANSI standards; and that the helmet requirements are "engineering standards" which he does not understand. Tr. 50. When questioned, he agreed that certain public safety websites have general recommendations concerning how to select a "safe helmet" or avoid an "unsafe helmet," but these do not necessarily reference whether any particular standards are being met.

By proffer, the defendant also called Keith Lindgren, Regional Director and President of the Motorcycle Safety League of Virginia. Mr. Lindgren supervises the Virginia Rider Training Program in the Tidewater area, and his testimony was represented, without challenge, as being cumulative of and consistent with that provided by Mr. Biondo.

## Questions to be Decided

As raised by the motion of the defendant, this court is requested to decide (1) whether the statute at issue is an impermissible delegation of authority by the General Assembly of legislative power to other administrative agencies or entities, and (2) whether the statute, as written, in referring to these standards, provides sufficient due process notice of what conduct is required of a citizen to avoid conviction and assure compliance.

## Determination of Issues

As counsel are aware, there is a presumption of validity, regularity, and constitutionality that attends the enactments of legislative bodies. If the statute in question can be construed as valid, it is the function of the court to provide a deferential review and do so. There is an attending duty on the courts, however, and that is to decide properly presented issues. In this case, while the charge is a traffic infraction, it remains a criminal charge punishable as a Class 4 misdemeanor. As a penal statute, it must be strictly construed against the state. The statute cannot be extended by implication or construction to say or require what it does not in order to uphold its validity.

A statute creating an offense should define the necessary acts with such certainty that one may know he is violating it. The statute must supply the standard by which the guilt of the accused is to be determined. While the experience of a law enforcement officer may be critical in investigating criminal activity and protecting the general welfare, such as in determining whether reasonable suspicion exists to detain an individual, such personal experience cannot be the definitional component of the crime itself. It is the statute itself that must provide the citizen with fair warning of the proscribed conduct.

A statute, which is vague, ambiguous, or otherwise fails to provide this fair notice, is unconstitutional. And, in providing this notice, if the statutory standards to which a citizen must conform are so inaccessible that an average person could not be expected to discover them by reasonable efforts, then the statute cannot be said to provide the requisite notice.

As a preliminary matter, the infraction citation, in describing the offense as operating a motorcycle "without approved helmet," is problematic. There is nothing in the statute that requires an "approved" helmet. Unlike those states which require operators to wear helmets which have been certified as being in compliance with an applicable regulatory standard, the statute before the court places the burden on the citizen to wear a protective helmet that "meets or exceeds" the referenced standards. It says nothing about "approved." As the evidence indicates, a helmet can meet or exceed the standards without being certified as in compliance or having any stamp or logo. Research indicates that DOT has no authority to approve or disapprove items of motor vehicle equipment. It is not a responsibility of a citizen under this statute to assure participation in a self-certification program by manufacturers of their helmet products. The officer's finding that neither a Snell nor a DOT logo was on the helmet does not prove a violation of the statute. As a consequence of requiring the citizen to meet or exceed the referenced standards, however, and as opposed to requiring that only helmets that have been manufacturer-certified be worn, it is critical that the wording of the statute in some manner provide meaningful information to the citizen concerning what is needed to "meet or exceed" the referenced standards. One cannot be convicted of a criminal violation by implication. The required behavioral standard must be set forth with sufficient clarity to remove all reasonable doubt as to the conduct sanctioned or precluded.

The first challenge raised by the defendant concerns the impermissible delegation of legislative authority to the third-party agencies. It is argued that the definition of the prohibited criminal activity has now been shifted to the discretion of persons or organizations over which the General Assembly has no power. As the evidence indicates, Snell may amend its standards every five years, and DOT and ANSI may amend less often. Without any additional oversight by the legislature, it is argued, what is or is not proscribed criminal conduct is being determined by those without authority to do so. The Commonwealth counters that these agencies have nothing to do with enforcement and are being looked to only as experts by the legislature within this technical area. It is contended that these entities do not exercise power within the state or mandate any action to the legislature.

The court finds that the governmental policy of what is proscribed or required remains within the control of the legislature. The fact that references are made to scientific or engineering standards to assure the utmost safety of those engaged in operating motorcycles does not mean that the legislative authority supporting this policy has been transferred to those developing the standards. These agencies are not telling the legislature what to do. The General Assembly remains in control of the policy being promoted, retains the power of amendment, and determines the punishment for violation. Accordingly, this court is unable to find an improper delegation of legislative authority and denies the defendant's motion in this regard.

The second challenge concerns the vagueness, confusion, or ambiguity of the statute and the extent to which due process is provided. Standing alone, the first two sentences of § 46.2-910 state:

> Every person operating a motorcycle shall wear a face shield, safety glasses, or goggles or have his motorcycle equipped with safety glass or a windshield at all times while operating the vehicle, and operators and any passengers thereon shall wear protective helmets. Operators and passengers riding on motorcycles with wheels of eight inches or less in diameter or in three-wheeled motorcycles which have non-removable roofs, windshields, and enclosed bodies shall not be required to wear protective helmets.

The court finds no legal infirmity in these requirements as they relate to the particular facts of this case. The conduct required does not reference any particular helmet standards.

It is the third sentence of § 46.2-910 that is most tested by the defendant's challenge. Instead of an articulated standard or a requirement that helmets be limited to only those certified as being in compliance with the standards recognized by the General Assembly, it reads: "The windshields, face shields, glasses or goggles, and protective helmets required by this section *shall meet or exceed the standards and specifications of the Snell Memorial Foundation, the American National Standards Institute, Inc. or the federal Department of Transportation.*" (Emphasis supplied.)

To prevail on his argument that this law is unconstitutionally vague, the defendant must demonstrate that the law "(1) does not define the conduct it prohibits with sufficient definitiveness, and (2) does not establish minimal guidelines to govern law enforcement." *United States v. Davis*, 36 F.3d 1424, 1434 (9th Cir. 1994), *cert. denied*, 115 S. Ct. 1147, 130 L. Ed. 2d 1106 (1995).

"A criminal statute is not vague if it provides adequate notice in terms that a reasonable person of ordinary intelligence would understand that (his or) her conduct is prohibited." *United States v. Martinez*, 49 F.3d 1398, 1403 (9th Cir. 1995), *cert. denied* 516 U.S. 1065, 116 S. Ct. 749, 133 L. Ed. 2d 696 (1996).

To determine the conduct required to meet or exceed DOT requirements, for instance, one would have to perform research to discover that the applicable standards are set forth as the Federal Motor Vehicle Safety Standard 218 (FMVSS 218). In order to find FMVSS 218, one would need to locate the Code of Federal Regulations. The index therein cites to chapter 49, § 517.218. The regulation itself consists of §§ 1 through 7.3.4 and covers sixteen pages. Within those sections are topics such as scope, purpose, application, definitions, requirements, impact attenuation, penetration, retention system, configuration, projections, labeling, helmet positioning index, selection of appropriate headform, reference marking, helmet positioning, conditioning, impact attenuation test, penetration test, and retention system test. Also included are seven and one half pages of diagrams and four pages of charts.

As characterized by the defendant's witnesses, these would appear to be engineering, design, or production specifications written for manufacturers. In a separate statute imposing these requirements on helmet manufacturers only, these standards presumably would be understood. This statute, however, requires the citizen to meet or exceed the standards set forth. To do that, the information must be understandable. Even the officer admitted that he could not locate any requirement in FMVSS 218 or the Snell standards which addressed the thickness of the required helmet liner in understandable terms. He was looking for the compliance stickers, which is a responsibility of the manufacturer not the citizen, and testing the weight of the helmet, which is not addressed in FMVSS 218 other than by scientific implication. Even if heavier helmets were demonstrably safer, there is noting in FMVSS 218 which states that a consumer can or should use weight to determine the quality of a helmet or that weight can provide information that the standards have been "met or exceeded."

The Commonwealth contends that the required information is readily available on the Internet, can be learned by questioning the retailer, or could be learned by making inquiry of an informed police officer. A synthesis of its position, in the court's view, is that common sense should be used by each individual to take the necessary steps to assure both private and public safety. As a personal statement, the court could not agree more. But common sense is relative to many attributes, including knowledge, opportunity, cultural forces, motivation, and personality. Such is not a legal standard. Many might argue that common sense precludes even riding motorcycles. The court cannot find someone guilty because they fail to meet the court's definition of common sense.

The court must figuratively be able to point to the regulation and say, this is what you did or did not do, and it is required. Agreeing that several, apparently authoritative, websites claim to reveal what is required to select a safe helmet, it is still not known what portion of this information is marketing, what is correct information, or even whether these agencies are qualified to accurately interpret the referenced standards. Not everyone has the desire, skill, inclination, or opportunity to perform research on a computer, and the Internet cannot be the foundation for providing due process notice of required conduct.

The court has located two cases in which the issues being raised herein have been addressed by circuit courts in this Commonwealth. Judge Graves, Rockingham County Circuit Court, in a summary opinion (Case # 20565, unpublished), on February 10, 1999, held § 46.2-910 to be unconstitutional. Judge Flannagan, in *Commonwealth v. Dixon*, 20 Va. Cir. 295 (Bristol, 1999), while acknowledging that it would be easier if the General Assembly required that all helmets sold or used in the Commonwealth have a label affixed indicating compliance with the standards, upheld the statute as constitutional, noting, however, that if an "expert has not examined, and perhaps tested, the helmet, it is unclear to the court at this time whether the Commonwealth will be able to prove its case beyond a reasonable doubt."

Even in the case upholding the statute, this court finds an implied question which prompts this decision. If an expert is needed to convince a court that a helmet is not in compliance, does not the citizen need an expert to determine that it is? If so, the conclusion is inescapable; the provisions cannot be understood by the average citizen and cannot serve as a constitutionally valid criminal standard to govern social conduct.

There is no contention before this court that the wearing of a helmet while operating a motorcycle is not a wise, expedient, and salutary course of conduct. The defendant by his conduct, in effect, admits that the dangers of operating a motorcycle are considerably enhanced absent a helmet, since he was wearing one. However, an act creating a statutory offense, to be valid, must specify with reasonable certainty and definiteness the conduct that is commanded or prohibited, so that a person of reasonable intelligence may know what is required. Unless an act creating a statutory offense satisfies these requirements, it violates the due process clauses of the Fourteenth Amendment and of the Virginia Constitution.

*Decision*

Confining itself to the issues before it, the court concludes that the standards applicable to manufacturers and designers for use in the production of protective headgear do not provide sufficient due process notice to the citizen of the conduct required or the type of protective helmet mandated. If a question is raised as to the validity of part of an act of the legislature, the court is not required to determine that the whole must fail if the part under consideration is clearly separable from other provisions that are valid. Accordingly, the court finds that the referenced standards in the third sentence of § 46.2-910, as they apply to protective helmets, are unconstitutionally vague, deny due process, and are unenforceable. The charge pending against the defendant for operating a motorcycle without an approved helmet is dismissed.

Exceptions are allowed to each party for the reasons advanced respectively at the hearing.