**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Nicholas Peter MITOLA, Jr.,
aka: Nicholas P. Mitola,
Defendant–Appellant.**

No. 06–30129.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2006.

Filed Dec. 19, 2006.

Joseph H. Harrington, Esq., Office of the U.S. Attorney, Spokane, WA, for Plaintiff–Appellee.

Terence M. Ryan, Esq., Nino & Ryan Law Office, Spokane, WA, for Defendant–Appellant.

Before: B. FLETCHER and McKEOWN, Circuit Judges, and SCHWARZER *, District Judge.

## MEMORANDUM **

In November 2005, Nicholas Mitola was convicted by a jury of being a felon in possession of a firearm, a violation of 18 U.S.C. §§ 922(g) and 924(e). He now appeals his conviction on two grounds. First, Mitola argues that the government failed to present sufficient evidence to sustain his conviction. Specifically, he contends that he was entrapped and that the government did not prove otherwise. Second, Mitola argues that the government was allowed to ask improper and irrelevant questions that deprived him of a fair trial. We have jurisdiction to review pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

### I.

Because the parties are conversant with the facts, we recite only those facts necessary to an understanding of our ruling.

On July 1, 2004, Perry Adrienne asked Mitola—a convicted felon—to get him a gun. According to Mitola, Adrienne made the request repeatedly, allegedly asking Mitola fifteen to twenty times on the night of July 1 st and then again on July 5th. Mitola testified that he rejected the requests.

On July 7 and 8, 2004, Adrienne met with FBI Agent Lee McEuen. They discussed the fact that Adrienne had asked Mitola for a gun. Given the potential for Mitola's unlawful possession of a firearm, Agent McEuen secured approval for an investigation, with Adrienne acting as a government agent.

On July 8th, Mitola and Adrienne got together once again. According to Mitola, Adrienne "continually badgered" him about obtaining a gun. That evening, Mitola and Adrienne stopped by the home of Scott Miracle, a business associate of Mitola. Mitola testified that he asked Scott: "is there any way you can get a couple of guns for me?" But that Scott refused. Nonetheless, Mitola told Adrienne that Scott could get them "some guns." Mitola testified that he lied so that Adrienne would not hound him further.

Mitola obtained a gun for Adrienne on July 23rd from another of his business associates.

### II.

A defense of entrapment has two elements: government inducement of the crime and the absence of predisposition on the part of the defendant. *See United States v. Poehlman,* 217 F.3d 692, 697 (9th Cir.2000). Once the defendant makes an initial showing—as Mitola did—the burden

---

* The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

shifts to the government to prove beyond a reasonable doubt that the defendant was not entrapped. *See Jacobson v. United States,* 503 U.S. 540, 548–49, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992); *United States v. Burt,* 143 F.3d 1215, 1218 (9th Cir.1998). In the instant case, the jury concluded that the government carried its burden.

This court defers to the findings "made by the trial jury, unless 'viewing the evidence in the light most favorable to the government, no reasonable jury could have concluded that the defendant[ ]' was neither induced nor predisposed to commit the charged offenses." *United States v. Si,* 343 F.3d 1116, 1125 (9th Cir.2003) (quoting *United States v. Davis,* 36 F.3d 1424, 1430 (9th Cir.1994)); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Because no special verdict form was used, there is no way of knowing whether the jury found that the government defeated the first or the second element of entrapment or both. Defeat of either one is sufficient. *See Jacobson,* 503 U.S. at 548, 112 S.Ct. 1535; *United States v. Jones,* 231 F.3d 508, 516 n. 5 (9th Cir.2000).

### A.

"Inducement must be provided by someone acting for the government." *Davis,* 36 F.3d at 1430. This includes any informant "clearly acting on behalf of the government *before* inducing a defendant." *Id.* at n. 2 (emphasis added); *see, e.g., United States v. Emmert,* 829 F.2d 805, 809 (9th Cir.1987). The record shows that, following his meetings with Agent McEuen on July 7th and 8th, Adrienne was acting on behalf of the government.

[1] Inducement is defined as "any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense." *Davis,* 36 F.3d at 1430. We need not decide whether Adrienne's conduct as a government agent constituted inducement because the evidence presented was sufficient to support a jury finding that Mitola was predisposed to commit the crime, and that is enough to sustain the jury's verdict.

### B.

The Government must show that the defendant was predisposed to commit the crime "at a time 'prior to the Government acts intended to create predisposition.'" *United States v. Skarie,* 971 F.2d 317, 321 (9th Cir.1992) (citation omitted); *see Poehlman,* 217 F.3d at 703.

"A defendant's reluctance to engage in criminal activity is the most important factor to consider in deciding the issue of predisposition." *United States v. Mendoza–Prado,* 314 F.3d 1099, 1102 (9th Cir. 2002) (citing *United States v. Martinez,* 122 F.3d 1161, 1163 (9th Cir.1997)). The Supreme Court has explained that "the ready commission of the criminal act amply demonstrates the defendant's predisposition." *Jacobson,* 503 U.S. at 549–550, 112 S.Ct. 1535.

■ There is substantial evidence to support a finding that Mitola readily participated in the instant offense. To begin, Mitola's responses to Adrienne's requests on July 1 st and July 5th—dates prior to the government's involvement—suggest that Mitola had doubts about his ability to secure a gun. During a taped July 23rd conversation with Adrienne, Mitola boasted that he is always up front about what he can do for people and always carries through. The jury could reasonably infer that Mitola's early hesitation reflected uncertainty about his ability to locate a gun and a related reluctance to make a promise he might not be able to keep, rather

than reluctance to commit a crime. *Cf. Jones,* 231 F.3d at 518 (recognizing a meaningful distinction between reluctance to possess guns "predicated on lack of money to pay for the firearms" and reluctance to commit the crime of being a felon in possession).

On July 8th—at or around the time government involvement commenced—Mitola acquiesced: according to his own testimony, he tried to arrange a gun purchase from Scott Miracle. Although nothing came of it because Scott declined, Mitola's testimony indicates that on July 8th he was willing to commit the crime. A jury could reasonably conclude that Mitola was not reluctant to commit the instant offense.

It appears that Mitola had no history of purchasing, using or possessing guns. Moreover, the government concedes that it, through its agent, made the initial suggestion of the gun purchase. These are the only facts that militate against a finding of predisposition. Given the evidence of the defendant's willingness to commit the offense (drawn from his own testimony), a reasonable jury could find predisposition.

### III.

On cross-examination, counsel for the United States repeatedly asked Mitola if he had been coached to put on his "best game face" for the jury and queried whether he was, in fact, putting on his "game face." The first three times Mitola was asked about his "game face" defense counsel's objections were denied by the district court. The district court sustained the objection the fourth time because the question had been asked and answered.

Counsel for the United States went on to ask Mitola about the absence of profanity from this testimony: "You have been testifying now for about two hours, you haven't use the word f* *k, have you?" Defense counsel made no objection.

We review for abuse of discretion the district court's decision to allow the questions regarding Mitola's use of his "game face." *See United States v. Morales,* 108 F.3d 1031, 1035 (9th Cir.1997). Our review of the question concerning profanity is limited to plain error since it was not objected to during cross-examination. *See United States v. Geston,* 299 F.3d 1130, 1134–35 (9th Cir.2002).

■ The government argues that its questions were intended to show that Mitola was not comporting himself in his natural or usual manner and that this was relevant to the jury's evaluation of his credibility. Questions about the kind of preparation or coaching a witness has received may be proper. *See, e.g., Geders v. United States,* 425 U.S. 80, 89, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). However, we find the government's tactics inappropriate here. We can find no explanation for the government counsel's unrelenting questioning about Mitola's "game face" other than the intent to rattle and harass the witness. *Cf. Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). The questioning simply was not appropriate and clearly not designed to elicit any response of consequence (and the fact that Mitola was able to formulate substantive responses to his benefit does not affect our conclusion in this respect).

■ The government's inquiry about Mitola's non-use of profanity is particularly inappropriate because of its complete lack of relevance. It is commonplace for individuals to dress and to speak more formally when appearing in court than they otherwise would, and highlighting this in a confrontational fashion on cross-examination revealed nothing. It was a thinly veiled attack on Mitola's character that was not

tethered to any point of legal or factual significance.

 Nonetheless, the admission of these four questions did not render the trial unfair—as Mitola contends—and does not require reversal of his conviction. Mitola answered the questions regarding his "game face" effectively, and we conclude any error was harmless. *See United States v. Gonzalez–Torres,* 309 F.3d 594, 600 (9th Cir.2002); *Young Ah Chor v. Dulles,* 270 F.2d 338, 342 (9th Cir.1959). The government's question regarding profanity did not affect Mitola's substantial rights. *See United States v. Tanh Huu Lam,* 251 F.3d 852, 861 (9th Cir.2001); *United States v. Sanchez,* 176 F.3d 1214, 1219 (9th Cir.1999). In sum, although we disapprove of the government's questioning, there was no reversible error.

**AFFIRMED.**