Sami Fayez S. ABURAHMAH, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. CV 95–176 TUC JMR,
CR 92–705 TUC JMR.

United States District Court,
D. Arizona.

July 7, 1995.

Eugene G. Iredale, San Diego, CA, for petitioner.

Virginia Kelly, Asst. U.S. Atty., Tucson, AZ, for respondent.

---

1. For a more comprehensive recitation of the factual background, *see United States v. Aburahmah,* 827 F.Supp. 612 (D.Ariz.1993), *aff'd,* 34 F.3d 1074, 1994 WL 461635 (9th Cir.1994).

## ORDER

ROLL, District Judge.

Sami Fayez S. Aburahmah ("petitioner") petitions this Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the petition is denied.

### BACKGROUND

In 1992, a federal grand jury sitting in Arizona indicted petitioner for the kidnaping of his estranged wife, Emerald Crawford Aburahmah ("Emerald"). *See* 18 U.S.C. § 1201. In 1982, petitioner was a foreign exchange student from the Middle East.[1] Petitioner and Emerald married in January 1982, but experienced marital difficulties and separated after only a few months of marriage. Petitioner then moved to Paterson, New Jersey for several months but later returned to Tucson, Arizona.

On September 29, 1982, Emerald and a girlfriend, along with their dates, encountered petitioner at the Sundance Saloon in Tucson. There, an argument ensued and petitioner was escorted from the premises. Shortly thereafter, Emerald and her friends left the bar and drove off in their vehicle. Petitioner pursued Emerald's vehicle and a high speed chase ensued. Emerald told her girlfriend that petitioner was going to kill her.

Frightened to return to her home, Emerald resided at her girlfriend's home for two days. During these two days, petitioner and another male went to the home of Emerald's mother searching for Emerald. Emerald's luggage was seen inside petitioner's van.

On October 1, 1982, petitioner located Emerald at her girlfriend's home; witnesses observed petitioner pulling Emerald by the arm into his van. Emerald was not seen alive by her family or friends after that date. Three days later, on October 4, 1982, a rock hunter discovered the smoldering body of an unidentified female in a remote area west of Deming, New Mexico. The woman's throat had been slit and her body severely burned. The body was later positively identified as Emerald.[2] Petitioner was in New Mexico during

2. Apparently unaware of the strife between Emerald and petitioner, Emerald's mother believed Emerald had left the country with petitioner in 1982. Seven years later, in 1989, Emerald's

the first week of October 1982 having obtained a New Mexico drivers' license on October 6, 1982.

At the time the federal indictment was filed, petitioner was serving a twenty-five year sentence in the Alabama Department of Corrections in connection with an unrelated 1984 conviction for murder and four counts of attempted murder. The federal indictment alleged that petitioner committed the charged offense on or about October 1, 1982. Following a jury trial, petitioner was convicted of Emerald's kidnaping. On August 4, 1993, petitioner was sentenced to life imprisonment; the life sentence to be served consecutive to the twenty-five year Alabama state sentence. On direct appeal, petitioner's conviction was affirmed.

As his sole claim for relief in this postconviction relief proceeding, petitioner contends his trial counsel rendered ineffective assistance of counsel. Petitioner advances two contentions in support of this claim. First, petitioner argues that counsel rendered ineffective assistance by not moving to dismiss the indictment on statute of limitations grounds. Second, petitioner alleges counsel rendered ineffective assistance because counsel did not request a "live-victim" jury instruction.

### DISCUSSION

■ A criminal defendant alleging ineffective assistance of counsel must show: (1) that an attorney's deficient performance was so serious that the attorney was not functioning as "counsel," and (2) that the deficient performance prejudiced the defendant thereby depriving him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Davis,* 36 F.3d 1424, 1433 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995).

■ To establish deficient performance, the petitioner must show that his attorney "made errors so serious" that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Prejudice exists where the defendant shows a "reasonable probability" that the result of the proceedings would have been different but for counsel's alleged errors. *Id.* at 694, 104 S.Ct. at 2068. In assessing counsel's performance, the Court applies "an objective standard of reasonableness." *Davis,* 36 F.3d at 1433 (citation omitted). The Court indulges "a strong presumption that ... counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The Court has a vivid recollection of counsel's performance. The Court has also reviewed the record in this matter. The Court finds that counsel's performance surpassed the constitutionally required standard of objectively reasonable assistance. At the outset of litigation, counsel petitioned the Court for the appointment of an investigator, which the Court granted. Thereafter, counsel filed pretrial motions, submitted proposed voir dire questions and submitted proposed jury instructions. At trial, counsel vigorously cross-examined witnesses, presented a defense witness, and made an opening statement and closing argument. After the verdict was rendered, counsel filed a cogent motion for a new trial. Counsel was tenacious in representing her client, and the Court so noted at sentencing. The Court finds no deficient performance. Further, even assuming deficient performance, for the reasons set forth below, the Court finds no reasonable probability of a different result but for the alleged errors.

### A. Statute of Limitations

Petitioner argues that counsel rendered ineffective assistance because counsel did not raise the statute of limitations as a basis for dismissing the indictment. This claim fails.

---

mother learned that petitioner was in fact incarcerated in Alabama. Based on this discovery, Emerald's mother contacted the Tucson Police Department ("TPD") and reported her daughter as a missing person. The TPD launched an investigation which included circulating missing person flyers to various law enforcement agencies in the western United States. The flyer listed various features by which Emerald could be identified, including a peculiar toe formation on her left foot. In 1991, an investigator with the Medical Examiner's Office in Albuquerque, New Mexico saw the missing person flyer and recalled the 1982 discovery of a "Jane Doe" with an abnormal toe formation on her left foot. Dental records ultimately confirmed the identification.

A five-year statute of limitations applies to non-capital federal offenses. 18 U.S.C. § 3282. However, no statute of limitations applies "to any person fleeing from justice." 18 U.S.C. § 3290. Emerald was murdered in October 1982; petitioner departed Arizona at this same time. Friends and relatives of Emerald believed that Emerald and petitioner had relocated elsewhere, possibly to the Middle East. Unbeknown to Emerald's friends and family, petitioner traveled to Alabama. The grand jury indicted petitioner for Emerald's kidnaping in 1992.

According to petitioner, counsel did not move for dismissal on statute of limitations grounds due to counsel's failure "to know the law, or to research the law." To the contrary, absent a showing otherwise, the Court presumes counsel acted competently within the broad range of reasonable professional assistance.[3] *Davis,* 36 F.3d at 1433. Thus, petitioner has not overcome the first prong of the *Strickland* analysis *i.e.* demonstrating deficient performance. Even if petitioner had demonstrated deficient performance, the Court would nonetheless find no reasonable probability of a different result but for the alleged error. In claiming prejudice, petitioner asserts "[a] court would certainly have applied the law and dismissed the indictment outright...." Application of the relevant law leads the Court to conclude otherwise.

No statute of limitations applies "to any person fleeing from justice." 18 U.S.C. § 3290. Therefore, if petitioner qualifies as a person who fled from justice within the meaning of § 3290, no statute of limitations applies, and no prejudice could inure to petitioner by virtue of counsel's failure to seek dismissal on statute of limitations grounds.

 Section 3290 tolls the statute of limitations where "the accused concealed himself with the intent to avoid arrest or prosecution." *United States v. Gonsalves,* 675 F.2d 1050, 1052 (9th Cir.1982) (citation omitted), *cert. denied,* 459 U.S. 837, 103 S.Ct. 83, 74 L.Ed.2d 78 (1982). The accused conceals himself to avoid arrest or prosecution where he "knew that he was wanted by the police and ... failed to submit to arrest." *Id.* The government need only prove flight from justice under § 3290 by a preponderance of the evidence. *Id.* at 1054.

Here, contemporaneous with Emerald's disappearance, petitioner abruptly departed Arizona and traveled cross-country to Alabama. Emerald's body was discovered severely burned; her throat was also slit.[4] The body was left in a remote area of New Mexico. These facts reflect efforts to avoid detection and frustrate identification of the body. Evidence placed petitioner in New Mexico during the first week of October 1982. Finally, evidence revealed that shortly after Emerald's death petitioner asked an acquaintance to tell anyone who inquired that petitioner was in Tucson at the time of Emerald's death; this fact suggests petitioner sought to establish an alibi. Not until 1989 did Emerald's mother learn that petitioner was imprisoned and, *a fortiori,* Emerald was not with petitioner.

---

**3.** As an exhibit to his reply brief, petitioner attaches a letter written to petitioner's current habeas counsel, Eugene G. Iredale, from trial counsel, Harriette P. Levitt. The letter is dated March 22, 1995. Ms. Levitt begins the letter by stating that she is writing the letter at the request of Mr. Iredale in connection with the instant proceedings. Therein, Ms. Levitt states, "I was not aware that the federal statute of limitations was five years." Ms. Levitt then continues:

> However, I did give consideration to filing a motion to dismiss on the grounds of preindictment delay. I did not do so because I felt that any statute of limitations would be tolled during the period of time that no one knew that a crime had been committed. It simply did not make any logical sense to me that a statute of limitations could have expired before anyone knew that the victim had been kidnapped.

This letter does not alter the Court's conclusion. First, the letter is not a sworn affidavit. Even assuming it was, Ms. Levitt maintains, and the Court finds, counsel did not render ineffective assistance. Even if Ms. Levitt claimed to have rendered ineffective assistance, the Court would nonetheless not be persuaded. The letter indicates counsel was aware that ten years had elapsed between the crime and the 1992 indictment. Counsel was aware of the lapse of time and the possible grounds for a motion to dismiss based on the lapse of time but concluded that such a motion would not be successful. Thus, counsel's decision not to pursue this course was a tactical decision falling within the broad range of professional assistance.

**4.** The government suggests that Emerald's throat was slit in an attempt to sever her head to further thwart identification of the remains.

■ On this record, the Court concludes the government has established petitioner's flight from justice within the meaning of § 3290 by a preponderance of the evidence. Thus, § 3290 tolled the statute of limitations until Emerald's body was positively identified in 1989.[5] The 1992 indictment was therefore filed within the five year statute of limitations provided in 18 U.S.C. § 3282.[6] Accordingly, even assuming deficient performance— the first prong of the *Strickland* analysis, petitioner can nonetheless not satisfy the second prong—demonstrating a reasonable probability of a different result but for the alleged error.

### B. *Absence of Live–Victim Jury Instruction*

Petitioner next claims that counsel rendered ineffective assistance in failing to request a "live-victim" jury instruction. This instruction would presumably charge the jury that in order for a defendant to be convicted of kidnaping under 18 U.S.C. § 1201, the government must prove that the abducted person was alive when transported across state lines.

In support, petitioner contends the Court noted this element just prior to closing arguments and defense counsel then argued the issue in closing argument.[7] Counsel did not request that the Court give an instruction containing the precise language he now suggests was necessary. According to petitioner, counsel's failure to request a live-victim instruction amounts to ineffective assistance of counsel. Petitioner maintains that no

blood was found on Emerald's body nor in the soil beneath the body. This, according to petitioner, indicates Emerald was killed in Arizona, and only later disposed of in New Mexico. Petitioner therefore contends the failure to request the instruction resulted in prejudice to petitioner in that a jury could find Emerald was killed in Arizona and only later transported to New Mexico.

The government suggests defense counsel did not request the instruction because a live-victim instruction would be inconsistent with the defense theory of the case—namely, petitioner's theory that a stranger abducted Emerald. Moreover, the government now contends that 18 U.S.C. § 1201 requires proof of no such element.[8]

■ The law requires that a kidnaping victim be alive at the time the victim was transported across state lines. *See, e.g., United States v. Davis,* 19 F.3d 166, 169 (5th Cir.1994); *United States v. Rees,* 193 F.Supp. 849, 858 (D.Md.1961).

This Court's instructions informed the jury that the government was required to prove Emerald was transported against her will. Counsel for both the government and petitioner argued inferences that could be drawn from the evidence as to whether Emerald was alive when transported across the Arizona/New Mexico state line.[9]

In relevant part, Instruction Ten charged the jury that the government must prove beyond a reasonable doubt:

will, even though dead, at least until her body was positively identified. This argument cannot stand. The government presents no authority supporting its contention that a kidnaped person continues to be held, even after their death, until the identity of the person is established.

5. In this respect, trial counsel's analysis was absolutely correct. *See supra* note 3.

6. The Court declines to accept the government's "continuing offense" argument. While kidnaping may qualify as a continuing offense under some circumstances, *see United States v. Garcia,* 854 F.2d 340 (9th Cir.1988), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2439, 104 L.Ed.2d 995 (1989), that doctrine does not apply here.

In *Garcia,* two children, Olga and Nora, were kidnaped in 1975, transported from Mexico into California, and held there against their will. Nora was released in 1979, Olga was released in 1981. An indictment was returned in 1986. In rejecting a statute of limitations argument as to the kidnaping of Olga, the Ninth Circuit stated that "the crime of kidnaping continues as long as the victim is held." *Id.* at 343. Here, the government claims Emerald was held against her

7. At a sidebar conference prior to defense counsel's closing argument, the Court advised counsel, "If the victim was dead before she was taken across state lines, that is not a federal kidnapping crime." (R. at 76, 5/5/93).

8. The government never argued this position to the jury at trial.

9. The Court's previous order discusses the sufficiency of the evidence as to whether Emerald was alive when she was transported in interstate commerce. *Aburahmah,* 827 F.Supp. at 615.

ONE: THE DEFENDANT KNOWINGLY AND WILLFULLY SEIZED, CONFINED, KIDNAPPED, ABDUCTED, OR CARRIED AWAY THE PERSON NAMED IN THE INDICTMENT;

TWO: THE PERSON NAMED IN THE INDICTMENT WAS THEREAFTER TRANSPORTED IN INTERSTATE COMMERCE WHILE SO SEIZED, CONFINED, KIDNAPPED, OR ABDUCTED ...

In relevant part, Instruction Eleven charged:

"KIDNAP" MEANS TO TAKE AND CARRY AWAY A PERSON BY FORCE AND AGAINST HIS OR HER WILL. "SEIZE," "CONFINE," "ABDUCT," AND "CARRY AWAY" ALL MEAN THE PHYSICAL OR BODILY TAKING AND CARRYING AWAY OF A PERSON, OR THE HOLDING OR RESTRICTION OF SOMEONE BY FORCE OR WITHOUT THAT PERSON'S CONSENT.

■ Thus, Instruction Ten and Instruction Eleven charge the jury that a conviction for "kidnap" requires a finding that the person was taken and carried away "against his or her will," which in turn encompasses a finding that Emerald was alive when abducted. Instruction Eleven also charges that "seize," "confine," "abduct," and "carry away" all involve "the physical or bodily taking and carrying away of a person, or the holding or restriction of someone by force or without that persons's consent." This charge, like the "kidnap" charge just preceding it, requires non-consensual restraint of the victim. Subpart two of Instruction Ten charges that the abducted person must travel in interstate commerce "while so seized, confined, kidnapped, or abducted ..." The instructions given properly instructed the jury as to the elements required under § 1201.

■ Furthermore, defense counsel unequivocally argued to the jury that the government was required to prove beyond a reasonable doubt that Emerald was alive when transported from Arizona to New Mexico. During closing, defense counsel argued:

Part of kidnapping, as the Judge has instructed you, is taking a person across state lines against their will.... [The prosecutor] didn't prove to you that Emer-ald was alive when she or her body went across the Arizona/New Mexico border.

And if she hasn't proved that, you can't find that there was a kidnapping. Whether you like Sami or not, whether you think justice is being done or not, if you can't resolve beyond a reasonable doubt that she was still alive when she crossed into New Mexico, then you cannot find under federal law that there has been a kidnapping.

(R. at 112–13, 5/5/93).

For all the above reasons, the Court finds neither deficient performance nor a reasonable probability of a different result but for the alleged errors. Accordingly,

**IT IS HEREBY ORDERED** that petitioner's March 20, 1995 petition pursuant to 28 U.S.C. § 2255 is **DENIED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED.**