UNITED STATES of America,
Plaintiff,

v.

Edward ROSENTHAL, Defendant.

No. CR 02–0053 CRB.

United States District Court,
N.D. California.

June 9, 2003.

George Bevan, U.S. Atty's Office, San Francisco, CA, for Plaintiff.

Robert V. Eye, Topeka, KS, Dennis P. Riordan, San Francisco, CA, Joseph D. Elford, San Francisco, CA, William M. Simpich, LAw Offices of William M. Simpich, Oakland, CA, for Defendant.

## SENTENCING MEMORANDUM

BREYER, District Judge.

A jury convicted defendant Edward Rosenthal of violating the federal Controlled Substances Act. The charges arose out of the defendant's cultivation of marijuana at 1419 Mandela Parkway in Oakland, California. Prior to sentencing the parties filed two memoranda each on the issues to be decided and identified the evidence they wanted the Court to consider. *See* United

---

1. The Court incorporates the statement of facts set forth in its Memorandum and Order

States Sentencing Guideline ("USSG") § 6A1.3. The Court also reviewed the sentencing recommendation of the United States Probation Office. On June 4, 2003, after oral argument from the parties, the Court sentenced the defendant to a one-day term of imprisonment. This Memorandum sets forth the Court's findings and reasoning in addition to what was stated in open court at the time of sentencing.[1]

## DISCUSSION

In a federal criminal proceeding, such as this, a defendant's sentence is determined by the United States Sentencing Guidelines ("USSG"). *See Koon v. United States,* 518 U.S. 81, 85, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). "A district court must impose a sentence within the applicable Guideline range, if it finds the case to be a typical one." *Id.* The first step, then, is to determine the applicable Guideline range. The Guideline range is determined by calculating the defendant's "offense level."

### A. Calculation of the offense level

#### 1. Drug quantity

The base offense level for the defendant's crimes corresponds to the quantity of marijuana at issue. USSG § 2D1.1. The Probation Office found that the defendant is responsible for 673 plants, the number of plants found at 1419 Mandela Parkway, plus the marijuana found in the defendant's residence and vehicle. For sentencing purposes, each plant is equivalent to 100 grams of marijuana. The Mandela Parkway plants plus the plants found in the defendant's vehicle and residence total 67.4 kilograms. Under the Guidelines, a drug quantity of at least 60 kilograms but

---

dated May 16, 2003 denying the defendant's motion for a new trial.

less than 80 kilograms results in a base offense level of 22.

■ The government objects to the Probation Office's finding. It contends that the defendant is also responsible for 405 plants purchased by Drug Enforcement Agency ("DEA") agents from the Harm Reduction Center ("HARM") in January 2002, plus 628 plants the government seized from HARM in February 2002, for a total drug quantity of more than 1000 plants totaling 107.70 kilograms. The government's theory is that Rosenthal had a supervisory role in the cultivation of marijuana at HARM and therefore is responsible for all the marijuana connected to HARM. Such a quantity would result in a base offense level of 26.

The defendant also argues against the Probation Office's drug quantity finding. At trial the government urged the jury to find that the number of marijuana plants exceeded 1,000. The jury disagreed and found that the number of plants the defendant conspired to cultivate was more than 100 but less than 1,000. Based on this finding, the defendant argues that the Court may not attribute more than 100 plants to him.

The Court agrees with the Probation Office that the government has not proved by a preponderance of the evidence that the drug quantity for which the defendant is responsible is 80 kilograms or more. While there is evidence that some of the plants seized from HARM came from the defendant, the Court is not persuaded that more than 120 of the plants came from the defendant. In fact, the government acknowledges that many of the plants at HARM came from sources other than the defendant, and it does not offer any evidence as to how many plants are attributable to the defendant and how many are attributable to other sources. The Court also finds, based on what it observed at trial, that the defendant did not supervise the cultivation of marijuana at HARM. Therefore the defendant is not responsible for all the marijuana the government obtained from HARM. The jury's finding that Rosenthal conspired to cultivate more than 100 but less than 1000 plants does not require a contrary conclusion. The fact that the jury did not find that the defendant conspired to cultivate more than 1000 plants suggests it rejected the government's argument that the defendant is responsible for all the plants at HARM.

■ The Court also disagrees with the defendant's assertion that the drug quantity should be limited to 100 plants based on the jury's drug quantity finding. The jury found that the defendant was responsible for more than 100 plants but less than 1000; it did not find that the defendant was responsible for no more than 100 plants.

Accordingly, the Court agrees with the Probation Office that the base offense level is 22.

## 2. Role in the Offense

■ The Guidelines provide for an upward adjustment to the offense level based on the defendant's role in the offense:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1. In its Sentencing Memorandum the government urged that the evidence supported an adjustment by as much as four levels. At sentencing, however, the government in effect withdrew its contention that the evidence supports a three or four-level adjustment and instead asserted that only a two-level adjustment is warranted. *See* Transcript of June 4, 2003 Sentencing at 8–9. In other words, the government no longer contends for the purposes of sentencing that the defendant's activity involved five or more participants or that it was otherwise extensive.

■ The government still claims that the defendant was an organizer, leader, manager or supervisor of others who assisted him in the cultivation of marijuana at 1419 Mandela Parkway. "When a defendant supervises other participants, she or he need exercise authority over only one of the participants to merit the adjustment." *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir.2000). The government relies primarily on the testimony of James Halloran who testified that he visited 1419 Mandela Parkway on occasion in 1999, 2000 and 2001 and observed persons other than the defendant performing the daily chores of watering, cloning, planting and boxing up the marijuana. Another witness testified that he met someone named Doug at 1419 Mandela Parkway and that Doug once delivered marijuana to HARM.

The Probation Office recommended that no adjustment be made, that is, that Rosenthal was not an organizer, leader, manager or supervisor.

The Court accepts that there were others assisting with the cultivation of marijuana at 1419 Mandela Parkway. The Court does not find, however, that Rosenthal directed or exercised authority over their conduct. *See United States v. Munoz*, 233 F.3d 1117, 1136 (9th Cir.2000) (role adjustment requires showing that de-

fendant "exercised some measure of control and responsibility" over others). There is no evidence, for example, that the "to do" lists offered by the government were prepared by Rosenthal. To the contrary, based on the Court's review of this evidence, it appears the lists were prepared by others. As is stated above, the Court also finds that the defendant did not supervise others at HARM. Accordingly, it agrees with the Probation Office that no upward adjustment for role in the offense is warranted.

### 3. Acceptance of responsibility

■ The Probation Office recommended decreasing the defendant's offense level by two for acceptance of responsibility pursuant to USSG § 3E1.1. The Commentary to this Guideline explains:

Conviction by trial … does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

USSG § 3E1.1, comment.(n.2); *see also United States v. Ochoa–Gaytan*, 265 F.3d 837, 842 (9th Cir.2001) (holding that "a judge cannot rely upon the fact that a defendant refuses to plead guilty and insists on his right to trial as the basis for denying an acceptance of responsibility") (citation and internal quotation omitted).

The government argues that Rosenthal is not entitled to the decrease because he has not shown contrition. The case upon which it relies—*United States v. Davis,* 36 F.3d 1424 (9th Cir.1994)—was applying an earlier version of the guidelines that is no longer applicable. That version permitted a decrease only if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *Id.* at 1435–36. It was amended in November 1992 to eliminate any reference to "a recognition and affirmative acceptance of personal responsibility." *Id.* In *United States v. Ochoa–Gaytan,* 265 F.3d 837 (9th Cir.2001), the court merely stated in dicta that a district court may deny an adjustment for acceptance of responsibility because of a lack of contrition, it did not say that it must. *Id.* (quoting *United States v. Sitton,* 968 F.2d 947, 962 (9th Cir.1992)). The government does not cite any case which suggests that under the current version of the Guidelines a defendant must demonstrate contrition before being entitled to an adjustment for acceptance of responsibility.

■ The government also argues that the defendant has not "truthfully admitt[ed] the conduct comprising the offense[s] of conviction," USSG § 3E1.1, cmt. n. 1, because he continues to maintain that he was acting as an officer of the City of Oakland. Whether the defendant was an officer of the City of Oakland, however, is not conduct comprising the defendant's offenses; indeed, at the government's urging, the Court held that the defendant's assertion that he was an officer and therefore immune from liability pursuant to 21 U.S.C. section 885(d) was not relevant to whether he was guilty of the charged offenses. The defendant has admitted that he was cultivating marijuana at 1419 Mandela Parkway, the conduct that constituted the violations of the Controlled Substances Act. He maintains, however, that the conduct was shielded from liability pursuant to section 885(d). Application Note 2 makes it clear that he is not required to abandon that legal defense in order to benefit from the responsibility reduction. USSG § 3E1.1, cmt. n. 2.

Moreover, regardless of whether the defendant was in fact a City official (a fact which has not been adjudicated), the Court finds that the defendant had a good faith belief that he was acting as a City of Oakland official.

■ Accordingly, the Court agrees with the Probation Office that the defendant's offense level should be decreased two levels for acceptance of responsibility, resulting in a total offense level of 20. Prior to trial he admitted that he cultivated marijuana. He never argued, for example, that the evidence was insufficient to support his conviction, that is, that he was not factually guilty; rather, his defense was that he was immune from prosecution because he was acting pursuant to the Oakland Ordinance and Proposition 215. He also argued that the jury should be told he was cultivating medical marijuana and permitted to impose its own "sense of justice" notwithstanding federal law, and he made constitutional challenges to the Controlled Substances Act. This is precisely the situation contemplated by Application Note 2.

The defendant does not have any prior convictions and thus falls within criminal history category I. The sentencing range for a defendant in criminal history category I with an offense level of 20 is 33 to 41 months.

**B. The Safety Valve**

■ The defendant's crimes carry a 60–month mandatory minimum sentence. If the defendant meets the criteria set forth in USSG § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases) (the "safety valve"), however, the mandatory minimum does not apply

and the defendant receives an additional two-level downward adjustment to his offense level. *See* USSG § 2D1.1(b)(6). The criteria are:

 (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

 (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

 (3) the offense did not result in death or serious bodily injury to any person;

 (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

 (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

USSG § 5C1.2(a).

The Probation Office found that the defendant satisfied the safety valve and thus that the 60–month minimum does not apply. In addition, the Probation Office recommended a two-level downward adjustment pursuant to Guideline section 2D1.1(B)(6).

The government concedes that all of the criteria, except one, are met. Government's Sentencing Memorandum at 3. It argues that the fourth requirement—that the defendant not be an organizer, leader, manager, or supervisor of others in the offense as determined by the sentencing guidelines—is not satisfied.

The Court has already found, however, that the defendant was not an organizer, leader, manager, or supervisor of others in the offense. *See supra* at pp. 1094–1096. Accordingly, the Court agrees with the Probation Office that the safety valve applies. The 60–month mandatory minimum is therefore inapplicable and the defendant is entitled to an additional two-level downward adjustment, *resulting in a total offense level of 18 with a corresponding sentence of 27 to 33 months.*

### C. Downward Departure

A district court must impose a sentence falling within the applicable Guideline "if the case is an ordinary one." *Koon,* 518 U.S. at 92, 116 S.Ct. 2035. If a case is "unusual," however, the district court may depart from the Guidelines. *Id.* at 93, 116 S.Ct. 2035; *see also* USSG 5K2.0. To determine whether a departure is warranted a district court should ask the following questions:

 "1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case?

 2) Has the [Sentencing] Commission forbidden departures based on those features?

 3) If not, has the Commission encouraged departures based on those features?

 4) If not, has the Commission discouraged departures based on those features?"

**1098**

*Koon,* 518 U.S. at 95, 116 S.Ct. 2035 (quoting *United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)).

> If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines takes as a whole," decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

*Id.* at 96, 116 S.Ct. 2035.

This is not an ordinary drug case. In July 1998, two years before the defendant committed the offenses for which he was convicted, the City of Oakland passed Ordinance No. 12076, also known as Chapter 8.42. The Ordinance had two related purposes. First, to provide for the distribution of safe and affordable medical marijuana "in a consistent, reliable, and legal fashion." Ordinance No. 12076 § 1(C). Second, "to provide immunity to medical provider associations pursuant to Section 885(d) of Title 21 of the United States Code, which provides that no liability shall be imposed under the federal Controlled Substances Act upon any duly authorized officer of a political subdivision of a state lawfully engaged in the enforcement of any municipal ordinance relating to controlled substances." *Id.* § 1(D). The Ordinance provided that the Oakland City Manager "shall designate one or more entities as a medical cannabis provider association" and that such designated provider "shall enforce the provisions of [the Ordinance], including enforcing its purpose of insuring that seriously ill Californians have the right to obtain and use marijuana for medical purposes." *Id.* § 3. The City's theory was that a designated association would be immune from federal criminal liability pursuant to section 885(d) because by cultivating and distributing medical marijuana it

would be acting as an official enforcing a municipal law related to controlled substances.

Shortly after the City passed the Ordinance it designated the Oakland Cannabis Buyers' Cooperative ("OCBC") to "enforce" the Ordinance. The OCBC in turn designated the defendant as its agent for purposes of what the City characterized as "enforcement" of the Ordinance, that is, cultivation of marijuana in accordance with the Ordinance. During pretrial proceedings the defendant testified that during the period at issue in this case he understood that he was cultivating marijuana pursuant to the Ordinance and therefore that under section 885(d) he was immune from federal criminal liability.

Prior to trial the Court concluded that despite the Ordinance, section 885(d) did not immunize the defendant's conduct from federal liability. Although the City of Oakland's purported designation of the defendant as a City official for the purpose of cultivating marijuana was not a legal defense to the charges in this case, it is a factor that takes this case well outside the "heartland" of narcotics cases. The Controlled Substances Act has been in effect since the 1970's, yet the Court is unaware of a single case in which a city—through a lawfully enacted ordinance—encouraged a defendant to manufacture a controlled substance and publicly represented—again through the ordinance—that notwithstanding federal law's prohibition of such conduct, the defendant would be shielded from liability under federal law. That is precisely what happened here. These unusual—indeed, unprecedented—circumstances warrant a downward departure.

The Court finds that the defendant honestly believed he was acting as a City official in accordance with state and local law, and therefore that his cultivation of marijuana was not a violation of federal law. The Court's finding is based on all

the evidence in this case, including the evidence presented before and after the trial, and, in particular, on the defendant's testimony during the pre-trial evidentiary hearing. The Court finds the defendant's testimony to be credible on this issue.

The Court also finds that the defendant's belief—while erroneous—was reasonable because of the actions of the Oakland City Council in enacting the Ordinance. A reading of the Ordinance by the public, not by lawyers, would lead a reasonable person to believe, albeit erroneously, that his conduct would be immunized from federal prosecution.

The Court rejects the government's assertion that the defendant did not have a good faith belief in the legality of his conduct. The surprising evidence, discovered after trial, that the City of Oakland's attorney actually advised the City Council that the Ordinance would not shield violators of federal law from prosecution calls into question the City Council's belief in the efficacy of its Ordinance. There is no evidence, however, that the defendant was aware of the City attorney's advice or that he was made aware of this Court's ruling in September 1998 that the Ordinance did not confer immunity. Again, the Court finds the defendant's testimony on this issue credible.

Moreover, the defendant's good faith belief that he was acting as an Oakland City official and was therefore immune from liability is corroborated by the openness of his conduct. He did not hide the fact that he was cultivating marijuana. He had the Oakland Fire Department inspect 1419 Mandela Parkway on two occasions and an Oakland City Council member also visited the site. He also told several City Council members of his intention to cultivate marijuana in accordance with Oakland's proposed plan. There is no evidence that any of these people ever advised the defendant that notwithstanding Oakland's Ordinance he could be imprisoned for his conduct.

The Court notes that, unsurprisingly, the Guidelines do not mention the circumstances of this case, or anything close to them. Thus, the Guidelines do not forbid the Court from departing on the basis of the extraordinary and unique circumstances of this case. *See Koon,* 518 U.S. at 95, 116 S.Ct. 2035. Accordingly, pursuant to Guideline Section 5K2.0, the Court finds that there exist mitigating circumstances of a kind not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence that is different from that which would fall within the Guideline range that corresponds to the total offense level.[2]

 Having determined, as did the Probation Office, that a departure is warranted by the extraordinary circumstances of this case, the Court must determine the extent of an appropriate departure. In making this decision, the Court has considered the sentencing factors set forth in 18 U.S.C. section 3553.

First, as the Court has explained, the unique nature and circumstances of the offense warrant a substantial departure.

Second, the need for a just punishment warrants a substantial departure.

Third, given the unique circumstances of this case, there is no likelihood that a substantial departure will result in unwarranted sentence disparity among defendants with similar records under similar

---

**2.** The defendant also seeks a departure on the basis of what is known as "lesser harms" pursuant to USSG § 5K2.11. The Court has not applied this departure because it has found that a departure is warranted on the

ground discussed in this Memorandum. If an appellate court reverses the Court's downward departure, then upon remand the Court will revisit the issue of whether a departure is warranted based on lesser harm.

circumstances. As defendant's counsel stated at sentencing, the narrow ground upon which the Court is departing does not set a precedent upon which other defendants could rely. In light of the Court's rulings in this case, a defendant could not again reasonably claim that he believed his conduct was legal because a state or municipality authorized his distribution of a prohibited narcotic. Unless and until the Ninth Circuit or the Supreme Court rules otherwise, or the United States Congress recognizes the legitimacy of medical marijuana, the cultivation and distribution of marijuana for any purpose, including a humanitarian one, violates federal law.

For all the reasons stated in this Memorandum, and for the reasons stated in open court at sentencing, the Court departs ten levels, to an offense level of 8, and sentences the defendant to a one-day term of imprisonment followed by a three-year term of supervised release, a fine of $1,000, and a special assessment of $300.

**IT IS SO ORDERED.**