OPINION
 

 BEEZER, Circuit Judge.
 

 Tony Si was convicted and sentenced for (1) conspiracy to commit a robbery that affects interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and (2) use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).
 

 Si alleges that he was denied a fair trial because (1) a Chinese translator was not appointed for him; (2) there was a
 
 Brady
 
 violation that resulted from the district court’s reversal of the magistrate judge’s discovery order requiring the government to produce information on an informant’s activities; (3) the evidence was insufficient to sustain his convictions; (4) he was entrapped as a matter of law; (5) the supplemental jury instructions omitted an essential element of the offense; and (6) the district court erred in imposing upward adjustments to his sentence.
 

 We have jurisdiction and we affirm the district court’s judgment and sentence.
 

 I
 

 In November 1998, Si unexpectedly ran into an acquaintance, Han Tsai “Jake” Hsi-ung (“Hsiung”), at a Ranch 99 supermarket in San Jose, California. Unbeknownst to Si, Hsiung was working as an FBI informant at that time. Si told Hsiung that he had heard that Hsiung was involved in the computer industry. Si asked Hsiung if he knew of any homes to burglarize, trucks to hijack or items to steal. Si told Hsiung that he would share the proceeds of the robbery in exchange for his help. Hsiung told Si that he would think about it and the two exchanged telephone numbers.
 

 Over the next few weeks, Hsiung and Si had several conversations, during which Si told Hsiung that he had a crew available to perform a robbery. Si told Hsiung elaborate stories about how his crew had recently committed several other robberies. At the direction of the FBI, Hsiung told Si that he knew of trucks carrying products from computer chip manufacturing companies to the San Francisco airport that they could rob.
 

 Hsiung then introduced Si to an undercover police officer, Alex Nguyen, who went by the alias Alex Vu (“Nguyen”). Nguyen’s undercover role was to play the part of a driver of a small truck who picks up computer parts to deliver to bigger trucks, which then take the computer parts to the San Francisco airport to be shipped out of state. Nguyen’s specific job in the
 
 *1121
 
 robbery was to provide the location of the larger truck so that it could be robbed.
 

 Si determined that the crew performing the truck robbery would be paid $85,000. Si suggested that Hsiung and Nguyen each put up one-third of the crew’s pay upfront. Si’s defense is that he never intended to rob the truck, but that he just wanted to trick Hsiung and Nguyen out of their up-front money.
 

 Testimony from others involved in the conspiracy indicated that Si’s role in the robbery was to arrange for the sale of the stolen computer parts, from which the three men would split the profit from the proceeds of the sale. The truck that was targeted was supposedly carrying between $800,000 to $1,000,000 worth of computer parts.
 

 The crew was managed by Minh Ha Lam (“Lam”), who also provided the firearms to be used in the robbery. Roderick Macasaet drove the van carrying the crew to the truck that was to be robbed. Lonnie McIntosh and Talmage Jones had the job of restraining the driver of the truck during the robbery. Christopher Chib had the job of driving the truck to the drop off location once it had been robbed.
 

 The crew was arrested on February 25, 1999, as they were approaching the location of the targeted truck. Si was also arrested en route to a pre-arranged meeting location.
 

 On March 3, 1999, Si and his five co-defendants were charged in a two count indictment for (1) conspiracy to commit a robbery that affects interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and (2) use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). On March 20, 2000, three co-defendants entered guilty pleas. The next day, one other co-defendant pleaded guilty. After the close of the government’s case-in-chief, the remaining co-defendant pleaded guilty. This left Si as the only remaining defendant.
 

 A jury found Si guilty of both charges on April 20, 2000. On February 12, 2001, Si was sentenced to a total of 138 months. Si appeals his judgment and sentence.
 

 II
 

 In a published order, we addressed Tony Si’s argument that his statutory and constitutional rights to an interpreter at trial were violated.
 
 [1]
 

 United States v. Si
 
 333
 
 F.Sd 1041 (9th
 
 Cir.2003). We stated that the determination whether a party needs an interpreter “is one that should be made on the record by the district court whenever the court is put on notice that there is a potential language difficulty.”
 
 Id.
 
 at 1044. We remanded the matter to the district court for the purpose of determining “(1) whether Si’s language abilities inhibited his comprehension of the proceedings or his ability to communicate with counsel and the court, and if so, (2) whether Si waived his right to an interpreter by not taking advantage of any interpreter that may have been available during Si’s trial.”
 
 Id.
 
 at 1045.
 

 The district court has responded to our order, finding:
 

 Based on all papers filed to date, as well as on the oral and documentary evidence presented at the hearing and the oral argument of counsel, the Court finds that: (1) Si’s language abilities did not impair his comprehension of the proceedings or Si’s ability to communicate with his counsel and the Court and (2) even assuming there had been an im
 
 *1122
 
 pairment, Si waived his right to an interpreter by failing to take advantage of either of the two (2) Cantonese interpreters which were present throughout the duration of Si’s criminal trial.
 

 Although we would ordinarily review the district court’s findings for clear error,
 
 see United States v. Lim,
 
 794 F.2d 469, 471 (9th Cir.1986), Si neither made any objections to these findings before the district court nor submitted any objections to this Court. With no objection, we presume the district court’s findings to be correct.
 

 On the basis of the district court’s unchallenged first finding — that Si’s abilities to comprehend the proceedings and communicate with his counsel were not impaired by language difficulties — we hold that the district court did not violate Si’s statutory or constitutional rights to an interpreter. So long as Si’s ability to communicate was not inhibited by language problems, appointment of an interpreter was within the district court’s discretion, and “especially in light of [Si’s] failure to [request an interpreter] we cannot say that the court abused its discretion here.”
 
 Gonzalez v. United States,
 
 33 F.3d 1047, 1051 (9th Cir.1994). We need not reach the question whether Si waived any right to an interpreter by failing to take advantage of interpreters that were available in the courtroom.
 

 Ill
 

 On January 5, 2000, Si moved for discovery of information pertaining to Jake Hsiung’s criminal activities and informant activities. The government was ordered to produce the information pursuant to
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government produced most of the requested material, including Hsiung’s criminal history and all reports of Hsiung’s activity as an informant in Si’s case. Nonetheless, the government withheld reports pertaining to Hsiung’s participation as an informant in unrelated, ongoing investigations, and redacted names and identifying information of unrelated individuals from reports about Hsiung’s past criminal activities. The district court subsequently reversed the discovery order to the extent that it required the government to produce anything beyond what it had already produced. Si challenges this reversal on appeal.
 

 We review the district court’s decision to allow the government to withhold evidence
 
 de novo. United States v. Monroe,
 
 943 F.2d 1007, 1012 (9th Cir.1991). We review the decision to allow the production of redacted documents for clear error.
 
 Id.
 
 We hold that there was no
 
 Brady
 
 violation under either standard of review.
 

 The Supreme Court has identified the three components of a
 
 Brady
 
 violation: “The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.”
 
 Strickler v. Greene,
 
 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Prejudice is shown only if the withheld evidence is material to the defendant’s guilt or punishment, such that “ ‘there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.’”
 
 Id.
 
 at 280, 119 S.Ct. 1936 (quoting
 
 United States v. Bagley,
 
 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). A defendant has the burden of showing that withheld evidence is material.
 
 United States v. Zuno-Arce,
 
 44 F.3d 1420, 1425 (9th Cir.1995) (“To prove a
 
 Brady
 
 violation, a defendant must show that the government withheld material exculpatory evidence.”).
 

 
 *1123
 
 With respect to the redacted names and identifying information, we cannot conclude that this information is favorable to Si. None of the individuals whose names were redacted were involved in Si’s case, and the redacted information is neither exculpatory nor impeachment evidence. Although Si argued before the district court that the defense might uncover additional impeachment evidence by interviewing the individuals whose names were redacted, this contention is too speculative to allow a conclusion that this information would have been favorable to Si. The district court did not clearly err in allowing redaction.
 

 As to the withheld documents, while these reports can be considered favorable to Si because, as information about Hsi-ung’s ongoing informant activities, they would constitute impeachment evidence tending to show Hsiung’s motives in testifying for the government, they are not material. In
 
 Belmontes v. Woodford,
 
 335 F.3d 1024, 2003 WL 21649351 (9th Cir. July 15, 2003), we held that impeachment information about a government informant is not material where the informant had already been “cross-examined extensively” about his criminal activities and role as an informant, the impeachment evidence that was disclosed was much more substantial than the evidence withheld, the informant’s testimony was corroborated by other witnesses, and the prosecutor had warned the jury about the informant’s credibility, such that the informant’s credibility was not critical to the prosecution’s case.
 
 Id.
 
 at *1043-1044. Similarly, Hsiung was cross-examined about his criminal activities and his agreement .with the government in Si’s case, the government disclosed the most damaging impeachment materials, Hsi-ung’s testimony was corroborated by other witnesses and by tape recordings of conversations, and Si’s defense was that he intended only to swindle the other co-conspirators out of their up-front money, such that Hsiung’s credibility was not the linchpin of the prosecution’s case. As in
 
 Bel-montes,
 
 “[t]he withheld evidence would not have added much, if anything,” to Si’s case.
 
 Id.
 
 at 1044. Under these circumstances, the withheld information was not material, and Si’s
 
 Brady
 
 claim fails.
 

 IV
 

 Si claims that there is insufficient evidence to sustain his conviction for conspiracy to commit a robbery that affects interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a). We conclude the evidence was sufficient to support Si’s conspiracy conviction.
 

 Claims of insufficient evidence are reviewed
 
 de novo. See United States v. Carranza,
 
 289 F.3d 634, 641 (9th Cir.2002). There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 United States v. Nelson,
 
 66 F.3d 1036, 1040 (9th Cir.1995).
 

 The Hobbs Act, 18 U.S.C. § 1951(a), states:
 

 Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
 

 In order to prove a Hobbs Act conspiracy under 18 U.S.C. § 1951(a), the government must show that: (1) two or more people agreed to commit a robbery or
 
 *1124
 
 extortion of the type discussed in the Hobbs Act; (2) the defendant had knowledge of the conspiratorial goal; and (3) the defendant voluntarily participated in trying to accomplish the conspiratorial goal.
 
 United States v. Diaz,
 
 248 F.3d 1065, 1084 (11th Cir.2001).
 

 Si claims that the government failed to prove that he conspired with any other co-conspirators to commit the robbery. He claims that the government cannot convict a defendant of conspiracy based on evidence showing that he agreed to conspire with government agents only.
 
 See United States v. Schmidt,
 
 947 F.2d 362, 367 (9th Cir.1991).
 

 There is adequate evidence demonstrating that Si conspired to commit the robbery with people other than government agents. In particular, Si conspired to commit the robbery with Lam. Si introduced Lam to Hsiung (the FBI informant) and Nguyen (the undercover police officer). Lam then recruited the other members of the crew and organized the robbery. Si arranged to have Nguyen pay Lam an upfront good-faith payment to set up the robbery. There were numerous telephone conversations between Si and Lam during the period prior to the arrest. Si rented the van that was to be used in the robbery and gave it to Lam. Finally, on the day of the arrest, Nguyen led a caravan to the prearranged location for the robbery; he was followed by Lam, who was followed by the robbery crew in the van rented by Si, who was followed by Si and the informant.
 

 We conclude there was sufficient evidence supporting a finding that Si conspired with non-governmental agents to commit a robbery affecting interstate commerce.
 

 V
 

 Si argues that there was insufficient evidence to sustain his conviction for use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). We conclude that there is sufficient evidence to sustain the firearm conviction.
 

 18 U.S.C. § 924(c) provides:
 

 [A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years....
 

 While no evidence indicated that Si used or carried a firearm, Si was convicted under a co-conspirator theory of vicarious liability. Co-conspirators can be held responsible for the reasonably foreseeable substantive crimes committed by other co-conspirators in furtherance of the conspiracy.
 
 Pinkerton v. United States,
 
 328 U.S. 640, 647-48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Based on the evidence, it was reasonably foreseeable to Si that firearms would be used or carried. During the trial, Nguyen testified that Si told him that the crew would be carrying firearms. Hsi-ung also testified that Si told him that there would be firearms involved in the robbery. This evidence is sufficient to convince a rational trier of fact beyond a reasonable doubt that it was reasonably foreseeable that a firearm would be used or carried in furtherance of the conspiracy to commit a crime of violence.
 

 VI
 

 Si complains that he was entrapped as a matter of law. We hold otherwise. Si was not entrapped because a reasonable jury could have found that he
 
 *1125
 
 was not induced to commit the robbery by the government.
 

 A defendant’s entrapment argument is reviewed
 
 de novo. United States v. Thickstun,
 
 110 F.3d 1394, 1396 (9th Cir.1997);
 
 United States v. Davis,
 
 36 F.3d 1424, 1430 (9th Cir.1994). The defense of entrapment has two elements: (1) government inducement to commit the crime and (2) an absence of predisposition on the part of the defendant to commit the crime.
 
 United States v. Poehlman,
 
 217 F.3d 692, 698 (9th Cir.2000). Although we review entrapment as a matter of law
 
 de novo,
 
 we defer to the credibility findings made by the trial jury, unless “viewing the evidence in the light most favorable to the government, no reasonable jury could have concluded that the defendant ]” was neither induced nor predisposed to commit the charged offenses.
 
 Davis,
 
 36 F.3d at 1430.
 

 Viewing the evidence in the light most favorable to the government, the jury could find that there was no inducement. The conspiracy was initiated by Si’s inquiry to Hsiung about Hsiung’s knowledge of any places Si could rob. The fact that the government actually provided the robbery target does not amount to inducement.
 
 See United States v. Simas,
 
 937 F.2d 459, 462 (9th Cir.1991) (stating that “the offering of an opportunity to commit a crime is not conduct amounting to inducement”).
 

 Si argues that he was induced because after a certain point he stopped taking Hsiung and Nguyen’s calls and indicated that he did not want to deal with them. The evidence shows, though, that Si still continued the conspiracy with Lam during the time Si suspended communication with Hsiung and Nguyen. Furthermore, Si independently arranged to have a van rented for the robbery. Sufficient evidence existed to conclude that Si was not induced to commit the conspiracy to rob the truck and its contents.
 

 The district court did not err in concluding that Si was not entrapped as a matter of law.
 

 VII
 

 Si’s next claim is that the supplemental jury instruction eliminated, misstated or omitted an essential element of the crime of conspiracy to commit a robbery that affects interstate commerce. In addition, Si claims that the district court abused its discretion in formulating the supplemental jury instruction and that the district court committed error in rejecting Si’s request for a multiple conspiracy instruction. We conclude that the jury instructions were proper.
 

 A
 

 During deliberations, the jury asked: “If Si did only a trick, according to your instructions we cannot say he’s guilty of using a firearm. But I believe that is true — a firearm was used for a trick what would be my decision?” The court responded:
 

 
 *1089
 
 A candidate for the state senate may receive no more than $1,000 in total combined monetary contributions from all political committees contributing to the candidate’s campaign, and a candidate for the state house of representatives may receive no more than $600 in total combined monetary contributions from all political committees contributing to the candidate’s campaign. The limitations in this section must be multiplied by the inflation factor [defined elsewhere]. The resulting figure must be rounded off to the nearest $50 increment.
 

 
 *1125
 
 If you find the government has proved beyond a reasonable doubt that the defendant conspired to commit a robbery (under my instructions), the fact that you find that he also intended to trick the money, which was otherwise to be used to pay the robbery crew, would not be a defense.
 

 If you find that the government did not prove beyond a reasonable doubt that he conspired to commit a robbery, you should ignore count 2[of use of a firearm in furtherance of a crime of violence]. Mr. Si is not charged with the use of a firearm in relationship in an attempt to steal or (trick) money.
 

 The only circumstance under which you should consider count 2 is if you find him guilty of conspiracy to commit robbery in count 1. Please let me know if you have any further questions in this regard.
 

 
 *1126
 
 Si’s counsel objected to the entire supplemental instructions generally and to the first paragraph specifically for compromising Si’s defense. Si’s counsel claims that the district court committed reversible error by leaving out the
 
 mens rea
 
 requirement, which thereby freed the government of its burden of proving each element of the charge beyond a reasonable doubt.
 

 B
 

 Whether supplemental jury instructions given in response to a jury request for clarification correctly state the elements of an offense is reviewed
 
 de novo. United States v. Gergen,
 
 172 F.3d 719, 724 (9th Cir.1999). On appeal, we also review the district court’s formulation of jury instructions in response to jury requests for clarification for abuse of discretion.
 
 United States v. Amlani,
 
 111 F.3d 705, 716 (9th Cir.1997).
 

 C
 

 The district court did not excise the
 
 mens rea
 
 requirement from the jury instructions. The district court’s original jury instructions stated that Si must become a conspirator member “knowing at least of its objectives and intending to help accomplish it” and by “willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy.”
 

 The supplemental jury instructions did not conflict with the original jury instructions. Nor did they supersede the original jury instructions. Rather, the supplemental jury instructions clarified that a finding that Si intended to trick Hsiung and Nguyen out of their up-front money was not a defense if the jury found that Si
 
 also
 
 intended to rob the truck and its contents. The supplemental jury instructions did not state or imply that a finding that Si
 
 only
 
 intended to steal the up-front money was not a defense. The supplemental jury instructions were an accurate statement of the law and did not compromise Si’s defense or eliminate an element of the offense.
 

 D
 

 The district court did not abuse its discretion in formulating the supplemental jury instructions in response to the jury’s question. Si alleges that the district court abused its discretion by not clearing up the jury’s confusion. Relying on cases which hold that the trial court has a duty to clear away all confusion “with concrete accuracy” when a jury requests clarification, Si claims instructional error.
 
 United States v. McIver,
 
 186 F.3d 1119, 1130 (9th Cir.1999) (quoting
 
 Bollenbach v. United States,
 
 326 U.S. 607, 613, 66 S.Ct. 402, 90 L.Ed. 350 (1946));
 
 see also United States v. Warren,
 
 984 F.2d 325, 329-30 (9th Cir.1993);
 
 United States v. Zimmerman,
 
 943 F.2d 1204, 1214 (10th Cir.1991).
 

 The supplemental jury instructions specifically stated that “Mr. Si is not charged with the use of a firearm in relationship in an attempt to steal or (trick) money. The only circumstance under which you should consider count 2[for use of a firearm in furtherance of a crime of violence] is if you find him guilty of conspiracy to commit robbery in count 1.” This statement directly addresses the jury’s request for clarification in a clear and accurate manner.
 

 The supplemental jury instructions specifically requested that the jury let the court know if jurors had any further questions regarding their request for clarification. The jury posed no further questions or requests for clarification. The district court’s supplemental jury instructions cleared away jury confusion with concrete accuracy. There was no abuse of discretion.
 

 E
 

 Si claims that the district court’s rejection of his request for multiple con
 
 *1127
 
 spiracy instructions constituted error. Si cites
 
 United States v. Perry,
 
 550 F.2d 524, 533 (9th Cir.1977), for the proposition that where an indictment alleges a single conspiracy and the evidence at trial indicates multiple conspiracies, a multiple conspiracy instruction is appropriate.
 

 A multiple conspiracy instruction was not required because the district court directed the jury:
 

 If you find that the conspiracy charged did not exist, then you must return a not guilty verdict even though you may find that some other conspiracy existed.
 

 Similarly, if you find that any defendant was not a member of the charged conspiracy, you must find that defendant not guilty even though that defendant may have been a member of some other conspiracy.
 

 These instructions adequately instructed the jury that it could not find Si guilty of an uncharged conspiracy (to trick money for example) even if proved, and therefore there was no error in not providing a multiple conspiracy theory.
 
 See United States v. Loya,
 
 807 F.2d 1483, 1492-93 (9th Cir.1987) (holding that there was no error in not giving a multiple conspiracy instruction where instructions almost identical to the ones in this case were given). The district court’s jury instructions were proper.
 

 VIII
 

 Si says that the district court erred in imposing an upward adjustment to his sentence based on Si’s role in the offense. The district court determined that Si was an organizer and leader of the Hobbs Act conspiracy and imposed a four offense level increase to his sentence pursuant to U.S.S.G. § 3B1.1(a) (2000).
 

 We review for clear error the application of an upward adjustment based on leadership status.
 
 United States v. Kubick,
 
 205 F.3d 1117, 1127 (9th Cir.1999).
 

 The sentencing guidelines provide that a defendant’s sentence will be increased “[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.” U.S.S.G. § 3Bl.l(a). In assessing whether a defendant is an organizer or leader, we consider
 

 the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 

 U.S.S.G. § 3Bl.l(a), Application Note 4.
 

 Si claims that he had absolutely no control or authority over any other individual involved in the commission of the offense, and that an upward adjustment should not apply. This argument flies in the face of evidence that Si exercised control and authority over the crew by determining when and how much to pay the crew.
 

 In addition, the other factors indicate that Si was a leader. Si decided how the robbery would occur and gave instructions to Lam to communicate to the crew. Si initiated the idea of the robbery when he first ran into Hsiung and Si offered to provide the crew for the job. Si stood to receive a larger share of the profits than some of the co-conspirators; while the crew expected to receive $85,000 in total, Si expected to receive one-third of the proceeds derived from the sale of the computer parts, the total value of which was supposedly between $800,000 and $1,000,000.
 

 Ample evidence supports the finding that Si was an organizer and leader of the
 
 *1128
 
 conspiracy. The court correctly adjusted Si’s sentence upward pursuant to U.S.S.G. § 3Bl.l(a).
 

 IX
 

 Si claims that the district court erred by imposing an upward adjustment to his sentence based on the court’s intended loss calculation. The district court determined that the amount of loss was between $800,000 and $1,000,000 and imposed a four offense level upward adjustment pursuant to U.S.S.G. § 2B1.1.
 

 The sentencing guidelines provide for an offense level increase depending on the amount of intended loss in a conspiracy. U.S.S.G. § 2B3.1(b)(7). The guidelines specify that the increase is four levels if the amount of loss is more than $800,000. U.S.S.G. § 2B3.1(b)(7)(E). Because the truck that was targeted for the robbery was supposedly carrying goods which were valued over $800,000, the court imposed a four level upward adjustment.
 

 Si argues that the amount of intended loss was the result of sentencing factor manipulation, also known as sentencing entrapment. Sentencing entrapment occurs when a defendant is predisposed to commit a lesser crime, but is entrapped into committing a more significant crime that is subject to more severe punishment because of government conduct.
 
 United States v. Staufer,
 
 38 F.3d 1103, 1106 (9th Cir.1994). In order to show sentencing entrapment, a defendant must show that the government engaged in outrageous official conduct which caused the individual to commit a more significant crime for which a greater penalty attaches.
 
 United States v. Davis,
 
 36 F.3d 1424, 1433 (9th Cir.1994).
 

 Si is precluded from claiming sentencing entrapment because he did not raise the issue before the district court.
 
 United States v. Whitten,
 
 706 F.2d 1000, 1012 (9th Cir.1983) (stating that generally “an issue not presented to the trial court cannot be raised for the first time on appeal”).
 
 [2]
 
 Although Si objected to the court’s loss calculation because Si thought the loss calculation should be based on the $60,000 that Si claims he was going to trick Hsiung and Nguyen out of (and not the $800,000 worth of property which was the target of the theft), Si did not object to the loss calculation on the ground of sentencing entrapment. Si’s failure to object waives his sentencing entrapment argument on appeal.
 
 [3]
 

 
 *1129
 
 X
 

 We AFFIRM the district court’s judgment and sentence.
 

 [1]
 

 . Si claims that the district court deprived him of a fair trial under the Court Interpreters Act, 28 U.S.C. § 1827, and the United States Constitution, U.S. Const, amends. V and VI.
 

 [2]
 

 . "Exceptions to the general rule are recognized where a new theory or issue arises while an appeal is pending because of a change in the law, or where the issue conceded or neglected below is purely one of law and does not affect or rely on the factual record developed by the parties, or where plain error has occurred and injustice might otherwise result.”
 
 Whitten,
 
 706 F.2d at 1012 (internal citations omitted). None of these exceptions are present here: there has been no change in the law, the issue neglected below relies on the factual record and plain error resulting in injustice has not occurred because, as discussed above, Si cannot meet the burden of proving sentencing entrapment by a preponderance of the evidence.
 

 [3]
 

 . Si's failure to object on the basis of sentencing entrapment is waived, rather than forfeited because Si intentionally relinquished his right to object for tactical reasons.
 
 United States v. Perez,
 
 116 F.3d 840, 845 (9th Cir.1997) ("Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the intentional relinquishment or abandonment of a known right.”) (internal quotations omitted). Before sentencing, Si addressed the issue of sentencing entrapment in a letter to the United States Probation Office after reviewing its preliminary PSR. Si chose not to raise a sentencing entrapment objection before the district court, though, choosing instead to argue that the amount for sentencing purposes should be based on the amount Si was trying to trick from the co-conspirators.
 
 Compare United States v. Jimenez,
 
 258 F.3d 1120, 1124 (9th Cir.2001) (holding that a claim was inadvertently forfeited, and not
 
 *1129
 
 waived, where there was no evidence the defendant knew of his right to object, but did not object for some tactical reason).